

# EXHIBIT I

# Deposition of Steven Schelk

Page 1

1        UNITED STATES DISTRICT COURT

2        NORTHERN DISTRICT OF ALABAMA

3             WESTERN DIVISION

4

5   CHRIS PROSCH,

6        Plaintiff,

7        vs.          CASE NO. 7:16-CV-01494-LSC

8   SANTANDER CONSUMER USA, INC.,
    ET AL.,
9
         Defendants.
10
    ~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
11

12

13             CONFIDENTIAL

14

15          DEPOSITION OF

16          STEVEN SCHELK

17

18

19        September 28, 2017

20           9:55 a.m.

21

22

23       2151 River Plaza Drive
              Suite 300
24       Sacramento, California

25   JENNIFER SCHUMACHER, CSR No. 9763

Page 2

1        APPEARANCES OF COUNSEL

2

3   For the Plaintiff CHRIS PROSCH:

4      JOHN C. HUBBARD, LLC
       BY JOHN C. HUBBARD, Esq.
5      2110 Devereux Circle, Suite 100
       Birmingham, Alabama 35243
6      (205) 378-8121
       Jch@jchubbardlaw.com
7

8      COCHRUN & SEALS
       BY: W. WHITNEY SEALS, Esq.
9      300 North 21st Street
       Birmingham, Alabama 35203
10     (205) 323-3900
       Whitney@plc-law.com
11

12  For the Defendants SANTANDER CONSUMER USA, INC., PATRICK
    K. WILLIS COMPANY, INC., & ALLSTAR RECOVERY, LLC:
13
       BURR FORMAN, LLP
14     BY:  FRANK SPRINGFIELD, Esq.
       420 North 20th Street, Suite 3400
15     Birmingham, Alabama 35203
       (205) 458-5187
16     Fspringfield@burr.com

17
               --oOo--
18

19

20

21

22

23

24

25

Page 3

1        INDEX OF EXAMINATIONS

2   WITNESS: STEVEN SCHELK

3   EXAMINATION                    PAGE

4   By Mr. Hubbard                   7

5   By Mr. Springfield              58

6

7

8             ---oOo---

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 4

1        INDEX TO EXHIBITS

2   Exhibit       Description        Page

3   Exhibit 1  Patrick K. Willis Company,        11

4        Inc.'s Amended Answer and

5        Affirmative Defenses to

6        Complaint

7   Exhibit 2   Second Amended Notice to Take     11

8        Deposition of 30(b)(6) Corporate

9        Representative of Defendant

10       Patrick k. Willis Company, Inc.

11  Exhibit 3  Patrick K. Willis Company,        14

12       Inc.'s Responses and Objections

13       to Plaintiff's First

14       Interrogatories to Defendant

15       Patrick K. Willis Company, Inc.

16  Exhibit 4   Account Notes              14

17  Exhibit 5   American Recovery Service      26

18       Account Status Report

19  Exhibit 6  Indemnity and Hold Harmless      33

20       Agreement and Vehicle Release

21  Exhibit 7  ARS Order of Repossession,       36

22       Repossession Report and Invoices

23  Exhibit 8   Computer Notes            40

24  Exhibit 9  Emails, WebTracker/Roth, 6/1/16    41

25  Exhibit 10  Account Scrubs            44

Page 5

1          INDEX TO EXHIBITS (Cont.)
2    Exhibit        Description          Page
3    Exhibit 11  General Order Sections 10020,    44
4         10090, 10150
5    Exhibit 12  LPR Dispatcher              46
6    Exhibit 13  ADESA Customer Invoice,      48
7         Remittance Copy
8    Exhibit 14  Emails, Henderson/Ford, 6/27/16   49
9    Exhibit 15  All Star Recovery Progress     55
10        Report
11
12
13                 ---o0o---
14
15
16
17
18
19
20
21
22
23
24
25

Page 6

1          DEPOSITION OF STEVEN SCHELK
2              September 28, 2017
3                 --o0o--
4              STEVEN SCHELK,
5    having been first duly sworn, testified as follows:
6
7          MR. HUBBARD:  All right.  Usual stipulations?
8          MR. SPRINGFIELD:  That's fine, just because
9    I'll forget --
10         MR. SEALS:  Read and sign or anything?
11         MR. SPRINGFIELD:  Usual stipulations, I'm fine.
12   We'll read and sign.
13         MR. SEALS:  Okay.
14         MR. SPRINGFIELD:  Designated confidential
15   pursuant to the protective order, and the portions that
16   aren't, we can work through that.  But I'll probably
17   forget later on to designate each thing individually.
18         MR. SEALS:  So we're clear, and John is taking
19   this deposition, but so we're clear, the entire
20   deposition is being marked confidential.  If there's
21   something that we disagree about, we can talk.
22         MR. SPRINGFIELD:  Correct.
23         MR. SEALS:  Just want to make sure we're on the
24   same page.
25              EXAMINATION

Page 7

1    BY MR. HUBBARD:
2       Q.  My name is John Hubbard.  I represent Chris
3    Prosch, who has brought a lawsuit against Santander, PK
4    Willis, and Allstar Recovery.  I understand we're here
5    today to take the corporate representative testimony of
6    PK Willis.  Can you state your name for us, please.
7       A.  Steven Schelk.
8       Q.  And who do you work for?
9       A.  Patrick K. Willis Company, Incorporated.
10      Q.  How do you usually refer to Patrick K. Willis?
11      A.  Through the dba American Recovery Service or
12   ARS.
13      Q.  I've gotten in the habit of saying PK Willis.
14   Is that okay if I call it that?
15      A.  That one is fine.
16      Q.  I'll try to call it ARS sometimes, too.  What
17   is your day-to-day job there?
18      A.  I'm the chief risk officer, and I oversee our
19   vendor management group and our loss mitigation group.
20      Q.  Have you ever given a deposition before?
21      A.  I have, yes.
22      Q.  About how many have you given?
23      A.  Four.
24      Q.  All right.  Well, you know how this works.  If
25   you need to take a break or talk to your lawyer or

Page 8

1    anything just let us know, we can do that.
2       A.  Thank you.
3       Q.  How long have you been with PK Willis?
4       A.  13 years now.
5       Q.  And you understand that PK Willis has
6    designated you to speak on its behalf and your answers
7    are binding on them?
8       A.  Yes.
9       Q.  Let's go through your employment with PK
10   Willis.
11      A.  I started at an administrative type of
12   position, was promoted into the management group,
13   took over my current position in 2008.  I've been
14   managing those two departments since.
15      Q.  What year did you start?
16      A.  2004.
17      Q.  What did you do before then?
18      A.  Immediately before I did a variety of customer
19   service jobs, was going to school also.
20      Q.  Where did you go to school?
21      A.  Sacramento State and the associated community
22   college district.
23      Q.  Did you graduate, get a degree?
24      A.  I actually just went back this year, and I'm
25   finishing my degree now.  Took a little hiatus.

Page 9

1    Q. All right.  What does PK Willis do, mainly?
2    A. We manage the outsourcing of repossession
3  assignments for major financial institutions.  It's very
4  limited to just repossession.  They issue the
5  repossession assignment.  We assign it to any one of our
6  network of repossession vendors, and then we manage the
7  repossession process, and then the post-repossession
8  process.
9    Q. I guess I'm -- what do you do that -- why can't
10  the lender just go straight to, let's say, Allstar
11  Recovery?  What do you guys kind of do in the middle
12  there?
13    A. So the sector is commonly referred to as
14  business process outsourcing, the idea being that if you
15  have 100 repossession assignments versus 100,000, you
16  represent different economic interests to the people
17  that you want to work with.  So we've been referred to
18  as an aggregator of repossession assignments.
19    Q. Right.
20    A. So we work for most financial institutions in
21  the country, and we leverage our many different business
22  relationships for the betterment of our clients and our
23  agents.
24    Q. So all PK Willis does is repos?
25    A. Managing the repossession process, yes,

Page 10

1  exactly.  We don't actually perform any physical
2  repossessions.
3    Q. Right.
4    A. But correct, we only manage repos.  We don't do
5  any associated collections or titling or marketing like
6  some of the other folks in our space.
7    Q. How many orders or referrals, I'm not sure the
8  word you would use, repo referrals do you get per year?
9    A. A couple hundred thousand.
10    Q. Do you have more lenders or clients than just
11  Santander?
12    MR. SEALS:  If you need to get something --
13    THE WITNESS:  No, not at all.  I thought I
14  muted it the first time.  Apologies.
15    MR. SEALS:  That's all right.
16    THE WITNESS:  I'm sorry.  Can you repeat the
17  question?
18  BY MR. HUBBARD:
19    Q. So you guys just don't work for just Santander,
20  right, you have other lenders?
21    A. Correct, most financial institutions in the
22  country.
23    Q. Is your office, is it just in California, or do
24  you have more offices?
25    A. Our only office is located in California.

Page 11

1    Q. How many employees do you have?
2    A. We range from between 300 and 350.
3    Q. How does PK Willis get paid?
4    A. We have preexisting contractual arrangements
5  with our clients, and we submit our invoices to them
6  within a designated system and receive usually
7  electronic payment from them.
8    Q. So when a client lender sends a repo to PK
9  Willis, does PK Willis have to complete the repo, or
10  does PK Willis just get paid when the referral comes in?
11    A. No, we have to complete the repossession for it
12  to be a valid payment.
13      (Exhibit 1 was
14      marked for identification.)
15  BY MR. HUBBARD:
16    Q. I will show you what I'm marking as Plaintiff's
17  Exhibit 1.  Take a look at that for a second.
18      Let's go ahead and mark the depo notice also.
19  This is the amended version.
20      (Exhibit 2 was
21      marked for identification.)
22  BY MR. HUBBARD:
23    Q. All right.  We will mark this as Exhibit 2.
24  Could you look at that?  Do you understand what
25  Plaintiff's Exhibit 2 is?

Page 12

1    A. Yes.
2    Q. Have you seen it?
3    A. Yes.
4    Q. Have you reviewed it?
5    A. Yes.
6    Q. Is this why you're here?
7    A. Yes.
8    Q. All right.  You can put that to the side.
9      All right.  Going back to Plaintiff's Exhibit
10  1, do you know what this is?
11    A. Yes.
12    Q. What is it?
13    A. It's the response to the amended complaint.
14    Q. Was this filed by PK Willis?
15    A. By our attorneys on behalf of PK Willis, yes.
16    Q. If we flip over to page 13, it mentions, I'll
17  just read it, "Any violation of the law, which Defendant
18  denies, was not intentional and resulted, if at all,
19  from a bona fide error notwithstanding the maintenance
20  of procedures reasonably adapted to avoid such errors."
21      Do you know what the error would be in this
22  defense?
23      MR. SPRINGFIELD:  I can make life easy for you
24  on this, since we filed this before we got into
25  discovery, we'll withdraw the bona fide error as to PK

Page 13

1  Willis.
2        MR. HUBBARD:  Perfect.
3  BY MR. HUBBARD:
4     Q.  Going down to 12, and Frank, this might be
5  another one for you.  Are you guys aware of these
6  opinions that are mentioned here?
7        MR. SPRINGFIELD:  Willing to withdraw 12 as it
8  relates to PK Willis as well.
9        MR. SEALS:  Okay.
10  BY MR. HUBBARD:
11     Q.  Going to 15.  15 states, "Plaintiff's claims
12  must fail to the extent that Plaintiff failed to
13  mitigate damages, if any, and/or failed to act with
14  reasonable diligence."
15        I know your attorney wrote this for you, and
16  you work for PK Willis, but are you aware of anything
17  that Mr. Prosch did wrong in this case?
18     A.  I understand that a period of time passed
19  before Mr. Prosch was able to get his vehicle back.  I
20  don't have much information on that subject, but I
21  assume it's related to that.
22     Q.  Are you aware that he did anything that caused
23  that time to increase?
24     A.  I'm not directly aware of any information
25  relating to his communications with Santander after the

Page 14

1  repossession.
2     Q.  Okay.  You can put that to the side.  Handing
3  you Plaintiff's Exhibit 3.
4           (Exhibit 3 was
5           marked for identification.)
6  BY MR. HUBBARD:
7     Q.  Take a look at that, and let me know when
8  you're ready.  I'm also going to give you Plaintiff's
9  Exhibit 4, which appears to be account notes, that may
10  be helpful to refer to.
11           (Exhibit 4 was
12           marked for identification.)
13        THE WITNESS:  Ready when you are.
14  BY MR. HUBBARD:
15     Q.  All right.  Flipping over to interrogatory 4,
16  can you explain this response starting at "Defendant
17  received the subject repossession order"?
18        MR. SPRINGFIELD:  Object to the form of the
19  question to the extent that the interrogatory speaks for
20  itself.  But you may answer.
21  BY MR. HUBBARD:
22     Q.  All right.  PK Willis I can -- PK Willis got
23  the repossession order from Santander on May 9th, 2016;
24  is that right?
25     A.  Yes.

Page 15

1        MR. SPRINGFIELD:  You're asking him if that's
2  what it says?
3        MR. SEALS:  Is that correct?
4  BY MR. HUBBARD:
5     Q.  Is that correct?
6     A.  Yes.
7     Q.  And on June 8th, 2016, Allstar repossessed the
8  vehicle and submitted a condition report to defendant.
9  That is correct, right, as it reads on here?
10     A.  Correct.
11     Q.  How did the car get to Allstar?
12     A.  Allstar located it and repossessed it.
13     Q.  Did that referral go from Santander to PK
14  Willis to Allstar?
15     A.  Yes.  Every assignment we receive from a lender
16  is assigned to one or multiple local repossession
17  agents, depending on where we're running the account.
18     Q.  So PK Willis is the one that sent Allstar out
19  to actually repo the car?
20     A.  We are the ones who sent the repo
21  authorization, yes.
22     Q.  Flipping over to page 6 at the top it says, "On
23  June 21st, 2016, Defendant received an email from SC,
24  stating that SC no longer had a lien on the vehicle and
25  instructing Defendant to arrange for the vehicle to be

Page 16

1  returned to the owner."
2        Do you know why the car was not returned on
3  June 21st, 2016?
4     A.  I understand that there was a logistical
5  concern regarding being able to reach Mr. Prosch to
6  arrange for the return of his vehicle.  But that would
7  have been on Santander's part, so it was kind of
8  secondhand information they were relaying to us.
9     Q.  Do you know if PK Willis had the address that
10  the car was picked up at on June 21st?
11     A.  The address that the vehicle was picked up from
12  was reported to us at the time of repossession from
13  Allstar, yes.
14     Q.  Is it your understanding that PK Willis -- did
15  you guys have any responsibility for your relationship
16  with Santander to return the vehicle at this time?
17     A.  No, we can't return a vehicle without written
18  authorization from our client in the form of a vehicle
19  release instructing when and where to release the
20  vehicle.
21     Q.  So what happened with the vehicle between June
22  21st and the time it actually was picked up by the
23  rightful owner?
24     A.  We're actually not aware.  The vehicle had been
25  transported to the auto auction shortly after the

Page 17

1  repossession, and outside a communication with Santander
2  about the release that you'll see in emails we produced,
3  we didn't have any information about what was going on
4  with the account or the communications with the
5  customer.
6      Q.  If we go down to the next line, "In the email,
7  SC sent Defendant a release for ADESA Atlanta to sign
8  upon return of the vehicle to Allstar."
9          Do you know what the purpose of the release
10 was?
11         MR. SPRINGFIELD:  Object to the form.  Question
12 calls for speculation as to what Santander intended by
13 the release.
14         THE WITNESS:  What line are you on here?  I'm
15 sorry.
16 BY MR. HUBBARD:
17     Q.  It's the next line after the one we just read,
18 "In the email," at the top of page 6.
19     A.  Can we review the documents real quick?  Do you
20 mind if I take a side bar for a moment?
21         MR. SEALS:  Please, take your time.  Hang on.
22 We'll step out.
23     (Break.)
24 BY MR. HUBBARD:
25     Q.  All right.  Let's back up one step.  What do

Page 18

1  you do on a day-to-day basis?
2      A.  You know, like I said, I oversee our vendor
3  management department and our loss mitigation
4  department.  I have a number of folks that report to me,
5  and I help them oversee their respective areas and
6  manage their respective staff.
7      Q.  What does vendor management mean?
8      A.  Vendor management means the management of our
9  repossession vendors or our local repossession agencies.
10     Q.  And I think you said loss mitigation?
11     A.  Uh-huh.
12     Q.  What does that mean?
13     A.  Loss mitigation refers to management of
14 insurance claims, customer complaints and lawsuits.
15     Q.  What does the term -- you referred -- how would
16 you refer to Santander as their relationship with PK
17 Willis; lender, customer, how would you --
18     A.  We refer to them as our client.  Lender is a
19 common term as well.
20     Q.  All right.  So does it happen -- I don't want
21 to say frequently, but does it come up to where a client
22 tells you to take a car back to where you got it from?
23     A.  Yes.
24     Q.  What is the general procedure for that
25 happening?

Page 19

1      A.  When a client notifies us to take a vehicle
2  back, they send a written order indicating who to
3  release the vehicle to, what fee is to be collected if
4  any fees are due at the time of the pick up, and
5  requiring the confirmation of signature that the chain
6  of custody has been completed, actual vehicle release
7  form that each client has.
8      Q.  Do you know if this policy is in writing?
9      A.  I do believe it is.
10     Q.  Okay.  In this particular case, was the general
11 procedure followed?
12     A.  Yes.
13     Q.  All right.  So the first step would have been
14 Santander sending in a release; is that correct?
15     A.  Correct.
16     Q.  And did they do that?
17     A.  In this case, they did not send the vehicle
18 release until later.  You would have to reference the
19 documents for the exact date.  It was sometime in July.
20     Q.  This is an official document, it's just not an
21 email saying release it to whomever?
22     A.  That's correct.
23     Q.  Okay.  We'll switch over to Exhibit 4, if we
24 can.  Can you tell me what this is?
25     A.  This is an export of our computer records of

Page 20

1  entries made into our internal system.
2      Q.  Are these inputs made by PK Willis employees?
3      A.  Both PK Willis employees and our
4  subcontractors.
5      Q.  Would Allstar Recovery be a subcontractor?
6      A.  Yes.
7      Q.  Okay.  What is going on, starting on page 11,
8  if you look under the notes part, can you tell what is
9  going on?
10     A.  Yes.  If I can draw your attention to the third
11 column, the column that says LGLNUM, that refers to the
12 individual inputting the information.  Anyplace you see
13 this ALCI, ALRR, those are acronyms for local
14 repossession agents.  So ALCI refers to one local
15 repossession agent, and you track over to the right-hand
16 side, their name is listed there as Citywide
17 Investigators, Montgomery, and then the second line
18 down, ALRR is River Region Recovery.  So those first two
19 lines show the account being assigned to those two
20 agents on May 10th, 2016, and then they are submitting
21 information back.
22         As you go down, you can see them submit a
23 number of updates.  Anywhere that the line has their
24 code in the legal number, anything they have entered
25 into the notes is from them, and the info will capture

Page 21

1 their IP address and the information -- the account
2 information for the account they were entering.  So this
3 was all entered via our online portal.  This is the
4 normal update activity that the repossession agents
5 conduct while they are working the assignment.
6    Q.  Can you tell on these notes when Allstar got
7 the hit on the license place?
8    A.  Not specifically the hit.  But the second page
9 does show where the repossession was assigned to
10 Allstar.
11    Q.  Which line is that?
12    A.  So Bates stamp 12, the third line.
13    Q.  Do you know what the time is on that one?
14    A.  So the zero means 12:00 a.m., so 12:47 a.m.
15 Pacific standard time, June the 8th.
16    Q.  And if you go down to the larger one, is
17 this -- it says repo location 1849-1901 Fox Ridge Road,
18 Tuscaloosa, Alabama 35406.  Do you know if that's where
19 the car is picked up at?
20    A.  It's entered under the repossession location,
21 so I would assume, yes, that's the case.
22    Q.  And this would have been entered on June 9th,
23 2016?
24    A.  Correct, at 9:00 a.m. -- 9:48 Pacific standard
25 time.

Page 22

1    Q.  Do you know who put this entry in here, does it
2 say?
3    A.  Yes, if you go over to the third column, MSAS
4 refers to Allstar Recovery.
5    Q.  Is there a specific employee at Allstar that
6 did it?
7    A.  The login is company specific, not individual
8 specific.  So you'd have to ask Allstar that question.
9    Q.  Okay.  Going to the next line.  Do you know
10 what that is, or the next note entry?  It says the
11 personal property notification.
12    A.  Yes.
13    Q.  What is that?
14    A.  That is part of the repossession report
15 information that's submitted.  We require all the
16 information above, the repo location, the police
17 department, so on and so forth, and also a list of the
18 personal property.  This is a general list.  They do a
19 more specific personal property inventory later.
20    Q.  All right.  Going to the next line, doesn't
21 have a note, but the next column it says, "Marked as
22 ready to transmit repo notification."  What does that
23 mean?
24    A.  That's an internal designation from our
25 computer system that all the steps have been required to

Page 23

1 report -- excuse me -- completed to report the
2 repossession.
3    Q.  Then there appear to be a bunch of pictures
4 added; is that right?
5    A.  Correct, that's also part of the condition
6 report process.
7    Q.  Going down to after the pictures where there's
8 no more notes, what are these entries?
9    A.  So the third column, anywhere it says Drive 3,
10 that's the name of the classification of this type of
11 account, just indicating the client that it had come
12 from and the portfolio it's in.  So anywhere you see
13 those notes, it's referring to something that's happened
14 from an internal employee or an automated system
15 process.  So if you see Drive 3 in that third column,
16 you'd need to go over to the seventh column, and those
17 are initials for the employees that were in the account.
18       So the first one there JBM refers to an
19 employee for the repo processing group named John
20 Malcumvue.  If you scroll over a little bit, it shows
21 when they entered the account, when they left the
22 account, how many notes were changed, whether or not
23 they changed anything, and then when they ultimately
24 saved out of the account.  So in this case this person
25 viewed the account, and it's just capturing that they

Page 24

1 viewed it for about three seconds.
2    Q.  Okay.  And then the next one looks like -- or
3 the next one starts with Priscilla Q.  Do you know what
4 that is?
5    A.  Yes, the marked as ready to transmit condition
6 report is another part in completing the post
7 repossession administrative process.
8    Q.  Can you tell what these others are all the way
9 down?
10    A.  Yes.
11       MR. SPRINGFIELD:  One thing, I want to put an
12 objection on the record, to the extent these relate to
13 conduct after the filing of the lawsuit --
14       MR. HUBBARD:  Right, yeah.
15       MR. SPRINGFIELD:  -- I'll object to any
16 questioning along those inadvertently --
17       MR. HUBBARD:  Right.  Do you know when that
18 was?
19       MR. SPRINGFIELD:  I believe it was in September
20 or August of 2016.
21 BY MR. HUBBARD:
22    Q.  Going down, looks like the last entry is August
23 1st, 2016.  Can you go through the rest of them?
24    A.  So each of them refer to notes being made by
25 various employees.  So based on that character code in

**Steven Schelk - CONFIDENTIAL**                    7 (25 - 28)

Page 25

1 the seventh column, and you'll see their names written
2 out in shorthand all the way to the right, that's the
3 individual that was making a note. They could have been
4 taking a call. They could have been noting information
5 on a client request. The notes would actually be
6 contained later in the account status report that we
7 produced. This is just the record of who was in, when
8 and what they changed.
9    Q. All right. So these notes would be on another
10 document that we have?
11    A. Correct.
12    Q. Do you know, for instance, if the -- like a
13 SERA verification was done, would that show up on these
14 account notes?
15    A. No, it wouldn't. In this case, there was no
16 scrub performed.
17    Q. Do you know why?
18    A. That's what we call the process. The scrub
19 process that we have is a cursory additional check to
20 use whatever publicly available resources we have to
21 potentially avoid issues that would happen during the
22 repossession process. We conduct the scrubs based on
23 certain client preferences and client arrangements. We
24 don't currently scrub Santander accounts. They perform
25 all those checks on their own.

Page 26

1    Q. We'll get into that a little bit later when a
2 document comes up.
3         (Exhibit 5 was
4         marked for identification.)
5 BY MR. HUBBARD:
6    Q. I'll move on to Exhibit 5. Is that the account
7 status report you just referred to?
8    A. Yes, correct, this is the final version of the
9 notes that was referenced in the previous file.
10    Q. So the ones that didn't have the account notes,
11 those notes are essentially over here on this exhibit?
12    A. Correct. For instance, on Bates stamp 11, line
13 5, it says Amanda W. edited 277 characters on May the
14 20th. You'll be able to go over here and see on May
15 20th on Bates stamp 17 halfway down the page it says
16 5/20/2016, 12:44 p.m., Amanda Wehrle, it's an update
17 being submitted back to our client. So that's a typical
18 kind of work product that's happening. The repossession
19 agents submits an update, our staff submits the update
20 to the client.
21    Q. Okay. Who does Amanda Wehrle work for?
22    A. American Recovery Service.
23    Q. And she would have the information of -- I'm
24 assuming she's here, and she would have this information
25 about what the house looks like?

Page 27

1    A. No. She works in our office at American
2 Recovery Service. She would have received the earlier
3 electronic update. If you look right above her update
4 on May 20th, there's update submitted from the agent,
5 May 11th it looks like, and that information would have
6 been what was submitted.
7    Q. Okay. Can you flip over to where the license
8 plate recognition found the hit on the car.
9       MR. SPRINGFIELD: What page number is that?
10       MR. HUBBARD: I'm not sure. Looks like it's
11 18.
12       THE WITNESS: Bates stamp 18 halfway down the
13 page.
14 BY MR. HUBBARD:
15    Q. All right.
16    A. There's a copy of an email pasted and showing
17 the hit and the reassignment of the account.
18    Q. And it was reassigned to Allstar because they
19 were the ones that found the hit?
20    A. That's correct.
21    Q. Where was the hit located at?
22    A. When we capture the hit information, it's taken
23 in a longitude and latitude, so there's not a physical
24 address that would necessarily be associated with it in
25 our notes.

Page 28

1    Q. Do you know when the actual address was
2 eventually put in?
3    A. By Allstar at the time of recovery.
4    Q. Does it matter under PK Willis policy that the
5 car was located somewhere different from where the
6 debtor lives?
7    A. Absolutely not. Most repossessions are
8 conducted at a place other than the debtor's address.
9    Q. So for instance, if the car was found in
10 California, that wouldn't raise any special procedures
11 that PK Willis would have to go through to confirm
12 before it took the car?
13       MR. SPRINGFIELD: Object to the form of the
14 question to the extent it calls for speculation.
15 Improper hypothetical. But you may answer.
16       THE WITNESS: Correct, I'm not aware of any
17 special procedures that would need to be applied.
18 BY MR. HUBBARD:
19    Q. Okay. Flipping over to page 20. Should be in
20 the same exhibit. At the very top, it says per Lauren
21 at MSAS. What does that mean?
22    A. That's the code for Allstar, MS, for
23 Mississippi is where their home office is located.
24    Q. And Christina, who does she work for?
25    A. American Recovery Service.

Page 29

1    Q. It says, "Unit transported today, 6/21/2016,
2  tentative delivery date" -- excuse me -- "tentative
3  delivery fee of ▮ and HH W/ ETA."  What is happening
4  here?
5    A. Christina Trujillo is a redemptions
6  representative.  So when she was contacted by Santander,
7  she contacted the agents to see if the vehicle was still
8  on lot.  It had just transported earlier that day to the
9  auto auction, so she took that opportunity to get a
10 delivery fee quote and confirm that it would be okay to
11 have it brought back to the repossession agent's lot to
12 be brought back to the customer.  The HH refers to a
13 hold harmless, which would hold them harmless from any
14 claims for receiving the vehicle back from the auction
15 if anything that might have happened during transport.
16   Q. Who would be held harmless?
17   A. The local agent would be held harmless from any
18 damage that happened to the vehicle after it left their
19 lot.  It's a logistical chain of custody issue that when
20 it leaves their lot, it's no longer covered, and so they
21 need to have a hold harmless to accept it back.
22   Q. And this ▮ is from which company to which
23 company?
24   A. That was the fee that Allstar quoted to bring
25 the vehicle back to the customer at his location.

Page 30

1    Q. Was this ▮ paid?
2    A. To my knowledge, it was not.
3    Q. Do you know why?
4    A. I understand it was due to a billing error, but
5  I'm actually pending some more information on that.  Not
6  for this lawsuit, but for my own purposes.  It should
7  have been billed.  It should have been paid.
8    Q. If it had been paid on 6/21, would the car have
9  been taken back then?
10   A. No, no, definitely not.
11   Q. And why not?
12   A. We didn't have a release at that time.  We
13 would have needed written fee approval, the document
14 hold harmless, the vehicle transported back to the lot,
15 and then a redemption or lease appointment made with the
16 customer who was to receive the vehicle back.
17   Q. If you go down to the next line, it says Tammy,
18 starts with -- what is this line?
19   A. A follow-up note from the same representative
20 noting that a different person at Allstar called and let
21 them know that it was secured from an apartment complex.
22 So she wanted to confirm that we were aware of that
23 information while we were working on getting
24 authorization to return.  We can't just drop a vehicle
25 off.  So when we tell them to return, they need to make

Page 31

1  sure that they get contact information for somebody.
2    Q. On 6/21/2016 what was Santander wanting PK
3  Willis to do with the car?
4    MR. SPRINGFIELD:  Object to the form to the
5  extent it calls for speculation.  You can answer if you
6  know.
7    THE WITNESS:  We can refer to the other emails,
8  and it details their communication.
9  BY MR. HUBBARD:
10   Q. As far as you know, they were not wanting them
11 to drop it at the apartment complex?
12   MR. SPRINGFIELD:  Same objection.  You can
13 answer.
14   THE WITNESS:  Again, I think the emails detail
15 that information, and we can reference them, and we can
16 walk through them, and I'd be more than happy to let you
17 know exactly what's going on.
18 BY MR. HUBBARD:
19   Q. Go down to 6/27, OSA, starts with OSA, what is
20 this note?
21   A. OSA means outside service agent, just another
22 term for vendor or repossession agent.
23   Q. Who would this be referring to?
24   A. Allstar was the only OSA on the account at this
25 point, so it would be referring to them.

Page 32

1    Q. What does unable to transfer to processor mean?
2    A. I'm not sure why they would be trying to
3  transfer to a processor.  The only processor that I'm
4  familiar with is a repossession processor, who would
5  have been transmitting the condition report information
6  immediately after the repo.  It's possible that this
7  person made a mistake and was really trying to transfer
8  them to the redemptions department because that's the
9  only people that would have been involved at this point.
10   Q. Going down to the 7/6/2016 entry from Yolanda
11 Holiday, what are these two notes?  I guess, actually,
12 the first one, not the second one, the 11:46 entry.
13   A. So the 11:46 entry is from Yolanda Holiday, an
14 internal employee, and she's saying that Sloan, an
15 employee from Allstar, called wanting to know if she can
16 sign the paperwork from the auto auction, that the unit
17 has been returned to their lot.  We told her, yes, it's
18 okay to sign the paperwork in receipt of the vehicle
19 from the auction.  She asked to speak with somebody
20 regarding the unit sitting on their lot, presumably
21 because they didn't have somebody to create a redemption
22 appointment with, and we advised Sloan that we were
23 waiting for the address for the vehicle to be returned
24 to, and she would be contacted.
25   Q. On 7/6/2016 the car is at Allstar's lot?

Page 33

1   A. This is when it was actually returned to
2 Allstar's lot, yes.
3   Q. Do you know if that is the north port lot?
4   A. I'm not aware of which lot offhand that it was
5 delivered to, but I believe we can reference that from
6 the disclosures.
7       MR. SEALS: Do we have the emails?
8       MR. HUBBARD: I should, yeah.
9       MR. SEALS: We're getting to those? I pulled
10 them up in case we needed them. You don't have to do it
11 right now, John. Just making sure we had them.
12      MR. HUBBARD: What exhibit are we on, 5?
13      MR. SPRINGFIELD: This was 5. I think that's
14 6.
15      (Exhibit 6 was
16       marked for identification.)
17 BY MR. HUBBARD:
18   Q. Exhibit 6, take a look at that for a second.
19   A. Okay.
20   Q. What is this?
21   A. This is the hold harmless that was referenced
22 earlier in favor of Allstar for accepting the vehicle
23 back from the local auto auction.
24   Q. This is between which parties?
25   A. Santander is the company who issues this hold

Page 34

1 harmless, and it's in favor of Allstar.
2   Q. Does PK Willis have any association with this?
3       MR. SPRINGFIELD: Object to the form of the
4 question. You can answer.
5       THE WITNESS: Insomuch as that we requested it
6 and transmitted it and it's a part of the process, yes.
7 BY MR. HUBBARD:
8   Q. And what was the purpose of it?
9   A. To hold Allstar harmless from any damage that
10 may have taken place to the vehicle after it left their
11 lot.
12   Q. Do you know if PK Willis drafted this?
13   A. We did not.
14   Q. And Allstar was the one that wanted this
15 agreement, correct?
16   A. Correct.
17      MR. SPRINGFIELD: Bates 22, correct?
18      MR. HUBBARD: Correct.
19 BY MR. HUBBARD:
20   Q. Flipping over to the next page 23, what is this
21 one?
22   A. This is a vehicle release from Santander
23 authorizing the release of the vehicle.
24   Q. Is this the release you're speaking of earlier?
25   A. Yes, this is the official document that we

Page 35

1 require in order to return any vehicle.
2   Q. Do you know who drafted this?
3   A. Santander.
4   Q. What day was it drafted on?
5       MR. SPRINGFIELD: Object to the form. Calls
6 for speculation. You can answer, if you know.
7 BY MR. HUBBARD:
8   Q. Or do you know what date is on here?
9   A. Yeah, apparently by the date on the corner,
10 July 28th, 2016, 10:34 a.m.
11   Q. Do you know why Chris Prosch is on this vehicle
12 release on page 23, and ████████ is on the hold
13 harmless agreement on page 22?
14   A. Because the hold harmless agreement references
15 the account name, and the vehicle release references the
16 individual authorized to receive the vehicle.
17   Q. And 23, what is the purpose of it?
18      MR. SPRINGFIELD: Object to the form. Calls
19 for speculation. You can answer.
20      THE WITNESS: To authorize the release of the
21 vehicle to the person indicated.
22 BY MR. HUBBARD:
23   Q. So Mr. Prosch had to sign this in order to get
24 the vehicle?
25      MR. SPRINGFIELD: Objection. Form. Same

Page 36

1 objection.
2       THE WITNESS: Yes, in the case that they refuse
3 to sign, they can also write refuse to sign, but we need
4 to have a record confirming that it was that person.
5 But generally, yes, everybody signs for this when they
6 receive the vehicle.
7 BY MR. HUBBARD:
8   Q. What happens if they refuse to sign?
9   A. If they refuse to sign, they write refuse to
10 sign, and we record the identity information to confirm
11 who we returned the vehicle back to.
12   Q. Do you know if Mr. Prosch got anything other
13 than the car for signing this?
14      MR. SPRINGFIELD: Object to the form of the
15 question. You can answer.
16      THE WITNESS: Not to my knowledge.
17 BY MR. HUBBARD:
18   Q. Put that to the side. Page 24, which is
19 Exhibit 7.
20      (Exhibit 7 was
21       marked for identification.)
22 BY MR. HUBBARD:
23   Q. Do you know what this is?
24   A. This is the order of repossession to the prior
25 agent, River Region Recovery.

Page 37

1    Q.  Let's see Exhibit 7 back real quick.  I'm going
2  to go ahead and attach these to the same one.  All
3  right.  So this is the initial repo order?
4    A.  Yes.
5       MR. SPRINGFIELD:  Just for the record,
6  referring to Bates 24.
7  BY MR. HUBBARD:
8    Q.  Correct.  And the date on this was May 9th,
9  2016?
10    A.  That's the input date when we received the
11  account.
12    Q.  Do you know if these were -- this is the same
13  repo order that we referenced back with the account
14  notes earlier?
15    A.  It is not, no.  I'm sorry.  We referenced two
16  repo orders earlier.  This is the first one that went to
17  River Region Recovery upon their initial receipt of the
18  account.
19    Q.  Okay.  That's what I was thinking.  Is this one
20  Santander sent -- not necessarily this actual order
21  we're looking at, but is this the same time period when
22  Santander sent PK Willis the repo order?
23    A.  Yes.
24    Q.  And then PK Willis, in turn, sends Bates stamp
25  24 to River Region?

Page 38

1    A.  Correct.
2    Q.  If you go over to 25, what is this?
3    A.  This is a copy of our internal document called
4  a repossession report.  It's a summarization of the
5  repossession charges and information.
6    Q.  It says police precinct on here.  What does
7  that refer to?
8    A.  That refers to the police precinct that Allstar
9  reported the repossession to.
10    Q.  How does that work?  What information do they
11  give to the sheriff's office?
12       MR. SPRINGFIELD:  Object to the form.
13       THE WITNESS:  It varies based on jurisdiction.
14  Typically, they just call to notify them that the
15  vehicle has been recovered in case somebody reports it
16  stolen.
17  BY MR. HUBBARD:
18    Q.  Is the VIN given, debtor name, do you know?
19    A.  I wouldn't know the custom for Tuscaloosa
20  County Sheriff Office, but depending on what they
21  prefer, sometimes they go in in person, sometimes they
22  call in, sometimes they take the VIN.  Sometimes the
23  police don't even want to know about a repossession.  So
24  you would have to ask Allstar that question with respect
25  to this particular sheriff office.

Page 39

1    Q.  If you go down to repossession fee, what does
2  that refer to?
3    A.  That refers to our charge to Santander for
4  successful repossession.
5    Q.  So when this repossession report was made, the
6  car was already in the possession of the repo company?
7    A.  Correct.
8    Q.  And the fee for recovering it was ███?
9    A.  Correct.
10    Q.  Okay.  Flipping over to page 34, what is this?
11    A.  This is our actual physical invoice to
12  Santander.
13    Q.  Do you know if PK Willis received payment for
14  this?
15    A.  I don't know for a fact, but presumably we did.
16    Q.  Okay.  Flipping over to 35, what does this
17  refer to?
18    A.  This is a subsequent billing for a storage fee
19  for the vehicle being on lot.
20    Q.  Do you know why the billing date is 6/27 but
21  the date vehicle out is 7/28?
22    A.  The date vehicle out is going to take into
23  account the redemption information.  The billing date is
24  only specific to when a storage invoice was received
25  from Allstar and this invoice was generated to

Page 40

1  Santander.
2    Q.  Can you tell what day this invoice was created?
3    A.  June 27th, 2016.
4    Q.  How can it refer to future dates, if it was
5  made on 6/27?
6    A.  That's a good question.  It might have been
7  reprinted, but I'm assuming by when this invoice was
8  made, you're referring to the billing date here.
9    Q.  Okay.  Do you know if this invoice was paid?
10    A.  Presumably so.
11    Q.  All right.  Flipping over to the next exhibit,
12  which is number --
13       MR. SPRINGFIELD:  8.
14          (Exhibit 8 was
15           marked for identification.)
16  BY MR. HUBBARD:
17    Q.  All right.  Do you know what we're looking at
18  here?
19    A.  This appears to be previous notes from prior
20  repossession attempts before the account was assigned to
21  American Recovery Service or PK Willis.
22    Q.  So all these are before the hit happened in
23  Tuscaloosa?
24    A.  Before the assignment was actually sent to us.
25  And yes, before the hit in Tuscaloosa.

Steven Schelk - CONFIDENTIAL                    11 (41 - 44)

Page 41

1    Q. Do you know if PK Willis employees created
2  these or ARS or who did it?
3    A. They did not. They were automatically copied
4  into our account file from Santander's account file when
5  they were assigned.
6    Q. So these are from Santander?
7    A. These are made by their prior repossession
8  vendor. They also have a network of national
9  repossession vendors, so presumably one of my
10 competitors conducting the same type of activity.
11   Q. Can you tell which one it was?
12   A. I cannot.
13        (Exhibit 9 was
14        marked for identification.)
15 BY MR. HUBBARD:
16   Q. Showing you Plaintiff's Exhibit 9. When you're
17 ready, tell us what this is.
18   A. It's a collection of various emails from the
19 processing of the account.
20   Q. What is the WebTracker on page 44, what does
21 that mean?
22   A. WebTracker is our online access point to our
23 internal system of record. This is where the agents
24 would log in and submit updates and submit repossession
25 information.

Page 42

1    Q. Have we looked at that yet, the WebTracker
2  report?
3    A. It's not a report. It's actually an interface.
4  So when they submit these updates that you've seen or
5  the repo info that you've seen or the pictures, this is
6  where they would input the information through -- in the
7  portal.
8    Q. So you send an email to WebTracker, and it puts
9  it into the interface?
10   A. Other way around. They put it into the
11 interface, and WebTracker automatically generates an
12 email to the customer service representative?
13   Q. So this was an automated email?
14   A. Correct. Generated by the agent's update
15 activity in the email.
16   Q. If you flip over to page 47, first, who is this
17 from, who is it to and what is it?
18   A. This is an email from Nisha Singh, who was the
19 LPR dispatch representative who took the call and
20 assigned the account to Allstar. It's an internal email
21 indicating that the account has been closed with the
22 prior agent and that it has been assigned to Allstar and
23 that we need to follow up and confirm both that the
24 account was properly closed with the previous agent and
25 that Allstar had successfully repossessed the vehicle.

Page 43

1    Q. What is the CID reference?
2    A. That is the number that the person called in
3  from when they had the hit.
4    Q. This was the license plate hit?
5    A. Correct.
6    Q. If you flip over to 48, who is CC9, the person
7  this was from?
8    A. I actually don't know that, but presumably, it
9  would be from Allstar based on them confirming that the
10 unit was secured and then replying to this email order
11 of repossession. I've never seen this CC9 designation
12 before, but if you go down, that person received the
13 initial order when it was assigned, and then they
14 responded back saying that vehicle had been secured.
15   Q. Flip over to 50. What is this email?
16   A. This is another internal email. For a little
17 bit of background, Santander commonly assigns accounts
18 for structured periods of time. The assignment of those
19 accounts and then the closure of those accounts is on a
20 structured time table basis. So we get what we call a
21 tier transfer close. This account was closed, we
22 believe, in a tier transfer because it was 30 days after
23 the initial assignment. And the account was recorded as
24 closed in our system when Allstar went to go report the
25 repo that night. So the automated close came in

Page 44

1  basically around generally the same time as the LPR hit.
2  To clarify, the automated close would not have prevented
3  the assigning of the LPR hit.
4    Q. Okay. Put that to the side.
5        (Exhibit 10 was
6        marked for identification.)
7  BY MR. HUBBARD:
8    Q. Handing you Plaintiff's Exhibit 10, I believe
9  we referenced this a little bit earlier, but tell us
10 what this is.
11   A. This is an internal standard operating
12 procedure document detailing what we do when we do our
13 cursory scrub process.
14   Q. And does this apply to Mr. Prosch's account?
15   A. It does not.
16   Q. And why not?
17   A. We do not perform any kind of scrub process for
18 Santander. They do that completely on their end.
19   Q. It refers to General Order 10150. I'm going to
20 go ahead and hand you what I've marked as Plaintiff's
21 Exhibit 11.
22        (Exhibit 11 was
23        marked for identification.)
24 BY MR. HUBBARD:
25   Q. Does it say anywhere on here which clients this

**Freedom Court Reporting, Inc**                    877-373-3660

Page 45

1  general order and the account scrubs, which ones PK
2  Willis actually has to do the work on?
3      A.  No.  That wouldn't be listed here.
4      Q.  Where would that be listed that PK Willis does
5  not have to do this?
6      A.  I don't believe that there's a compiled list.
7  There are certain clients that our team knows that they
8  are required to do as part of their release process.
9      Q.  Would that be in the agreement between
10 Santander and PK Willis?
11     A.  No.
12     Q.  Just to be clear, it is part of PK Willis'
13 procedure to not do VIN checks on Santander accounts?
14     A.  To be clear, we don't have the capability to do
15 a VIN check.  There is no national database that we
16 would be able to go check.
17     Q.  So when the clients where this -- the account
18 scrub is in place, what kind of VIN check does PK Willis
19 do?
20     A.  There are certain states that have free online
21 access to their DMV records.  And if it is in a state
22 and a client that we do the checks on, then we will
23 check that resource.  And if we find that our client
24 does not hold the lien, we will verify with them before
25 issuing the order.

Page 46

1      Q.  And I say the VIN check.  Lien verification
2  also, there was no policy for PK Willis to do a lien
3  verification on this account, correct?
4      A.  Correct.  Santander does all their own lien
5  verifications.
6      Q.  Flipping over to 111, is this part of the same
7  policy?
8      A.  Yes.
9      Q.  What does No. 4 mean, identifying deceased
10 customer and/or co-signer?
11     A.  Again, there's no generally available resource,
12 but if we become aware or have the means to confirm
13 whether or not somebody has been recently deceased, then
14 that's a check that we'll do.
15     Q.  What happens if someone has been recently
16 deceased?
17     A.  Again, any time one of these checks gets a hit
18 or some sort of adverse information, all we can do is
19 not do anything and send it to our lienholder for
20 verification.  Whether it's being deceased or bankruptcy
21 or the lien, the finance company is the only one who is
22 situated to be able to evaluate when the account can go
23 out.
24         (Exhibit 12 was
25         marked for identification.)

Page 47

1  BY MR. HUBBARD:
2      Q.  I'm handing you Plaintiff's Exhibit 12.  What
3  is this?
4      A.  This is our standard operating procedure for
5  the LPR dispatch position.
6      Q.  What does that mean?
7      A.  The LPR dispatch position is the person who
8  receives the call from the agent in the field and then
9  authorizes the repossession to take place, whether the
10 account is open in our system.
11     Q.  Do the companies get paid for the license plate
12 hit or just when they repo the car?
13         MR. SPRINGFIELD:  Object to the form.  You can
14 answer.
15         THE WITNESS:  In this circumstance, we only get
16 paid for the repossession hit.  Based on other -- excuse
17 me.  I don't mean to be deceiving there.  Only for the
18 repossession.  Based on other circumstances, the LPR hit
19 is also a separate charge.
20 BY MR. HUBBARD:
21     Q.  What would be those other circumstances?
22     A.  Based on the client billing arrangement.
23     Q.  Can you think of a circumstance where that
24 would come up?
25     A.  Yes.

Page 48

1         MR. SPRINGFIELD:  Object to the form.
2  BY MR. HUBBARD:
3      Q.  And what is it?
4      A.  If a different client had a different billing
5  arrangement that allowed us to charge a higher fee.
6      Q.  But Santander did not have that, correct?
7      A.  Not with respect to this account.  They do have
8  other accounts that are subject to that fee.
9      Q.  Does PK Willis do the license plate hits or is
10 it Allstar?
11     A.  Well, we're both involved in the process, but
12 we manage the dispatch process for the issuance of the
13 repossession orders.
14     Q.  And that is when a hit comes back as -- so when
15 they find a car that needs to be repossessed, that is
16 when PK Willis will get involved?
17     A.  Correct.  We get notification from our data
18 provider, and the local agent is prompted to contact us.
19 And they call our 24-hour dispatch center, we confirm
20 that the account is open, and we issue the assignment.
21         (Exhibit 13 was
22         marked for identification.)
23 BY MR. HUBBARD:
24     Q.  Handing you what I've marked as 13.
25         MR. SPRINGFIELD:  Are you done with 12?

Page 49

1     MR. HUBBARD: Yeah.
2   BY MR. HUBBARD:
3     Q. If you know, what is this invoice?
4     A. I do not.
5     Q. Do you have any idea what this is?
6     A. I've never seen it before, and it's not an
7   invoice between any of the companies that I work for.
8   I'm sure I could infer some information on here, but I
9   wouldn't be comfortable doing so.
10    Q. That's okay. Thank you. Let's take a break.
11       (Break.)
12       (Exhibit 14 was
13       marked for identification.)
14  BY MR. HUBBARD:
15    Q. Handing you Exhibit 14, can you tell what we're
16  looking at here?
17    A. This appears to be an email from Santander with
18  the hold harmless that we had requested.
19    Q. All right. Flip over to what's stamped as 139.
20    A. Okay.
21    Q. And the email from Henderson to looks like some
22  PK Willis people, what is this email communicating?
23    A. Are you referring to the Tuesday, June 21st
24  email?
25    Q. Right. Starts with, "Christina, we are no

Page 50

1   longer lien on this unit."
2     A. It's confirmation from Ms. Henderson that they
3   no longer have the lien and that the vehicle needs to be
4   returned. She gives some additional instructions and
5   then issues a request for Phillip to do a take-back
6   order and bill all fees back to Santander.
7     Q. Do you know the two people this was sent to at
8   PK Willis, were these the correct people it should have
9   been sent to?
10    A. Christina Trujillo and Weston Hibben would both
11  have been redemption folks that should have received
12  that email, yes.
13    Q. And Santander is asking PK Willis -- they are
14  saying, "We are giving the okay to drop unit without
15  contact or signature due to lien loss."
16       MR. SPRINGFIELD: Object to the form. You're
17  talking about this specific email?
18  BY MR. HUBBARD:
19    Q. This specific email.
20    A. So if you look further up, they actually revise
21  that instruction. This email authorization to drop the
22  vehicle off would not have been sufficient. So we would
23  have needed the actual physical formal release to
24  confirm those same instructions. But if you notice,
25  Phillip Simonton, the reinstatement manager, confirms

Page 51

1   that we're supposed to stand by for further
2   instructions.
3     Q. So this first email we talked about where it
4   says it's okay to drop unit without a contact or
5   signature, under PK Willis policy, it can't do this?
6     A. If we had had a written release form, the
7   release form that we had discussed earlier with
8   Santander, that confirmed that it needed to be done in
9   writing, then, yes, it would have been done.
10    Q. But that release, you didn't have one at this
11  time?
12    A. Correct. We actually didn't receive any
13  release from Santander to release to a third party until
14  the date of the release.
15    Q. Do you know why that is?
16       MR. SPRINGFIELD: Object to the form.
17       THE WITNESS: Not without speculating, no. As
18  I mentioned before, I understand there was a delay in
19  coordinating the return with the customer.
20  BY MR. HUBBARD:
21    Q. Between June 21st and the time the car was
22  returned and the release was signed, what was PK Willis
23  doing to try to get the car back to the rightful owner?
24    A. Standing by for further instructions, as
25  Santander had instructed.

Page 52

1     Q. So it was not going to do anything without
2   Santander telling it what to do?
3       MR. SPRINGFIELD: Object to form.
4       THE WITNESS: Correct, without a written
5   release in the form described that's from Santander.
6   BY MR. HUBBARD:
7     Q. Do we have all the documentation of any release
8   being followed up on, as far as you know?
9     A. As far as I know, yes.
10    Q. You mentioned earlier on 139 the order changed,
11  or there was a clarification from someone. What were
12  you referring to there?
13    A. That the instruction referencing the okay to
14  drop the unit without contact or signature was
15  immediately revised by their reinstatement manager.
16    Q. Where is that at?
17    A. The email right above on Bates stamp 139.
18    Q. And this would be -- you would be Team ARS?
19    A. Yes.
20    Q. And what is the clarification here?
21    A. Please hold at lot until further notice on
22  where to deliver back.
23    Q. Where is this at?
24    A. At the top of 139 under the bolded Team ARS.
25    Q. All right. So the four bullet points, the

Page 53

1  first one, is that the one you're referring to?
2       MR. SEALS:  No, he's talking about this.
3  BY MR. HUBBARD:
4    Q.  Oh, before the bullet points.
5    A.  Correct.  The bullet points would be the
6  follow-up items.  They are confirming the first bullet
7  that fees need to be billed back.  The second, that they
8  need a condition report and pictures.  The third, that
9  they need the location that the vehicle is going to be
10 returned to, including address, phone number or company
11 name, and then also that the ETA of the delivery back to
12 the new owner.  And then also confirming that they need
13 to send the hold harmlesses as requested.
14   Q.  And then on page 138 it says, "The agent has
15 been advised," and this is from Christina to some other
16 people.  What does that mean, if you know?
17   A.  That means they have relayed the information to
18 the agent regarding the pending redemption and return to
19 the lot.  It was referenced in the notes, previous
20 discussion with Allstar on that same date.
21   Q.  If you move up to the email on the top of the
22 page, it says, "The agent will need a hold harmless on
23 this account," what does that mean?
24   A.  Confirming our request for a hold harmless for
25 accepting the vehicle back from the transporter after it

Page 54

1  had left the agent's lot.
2    Q.  Is there a point under PK Willis' policy that
3  if it doesn't hear from Santander about the release that
4  it should follow up with Santander?
5    A.  No.  It's very common for Santander to
6  communicate with us about potential redemption or
7  reinstatement terms and then follow up on their own,
8  especially in cases where we don't have the vehicle.  If
9  we still had the vehicle on the lot, we probably would
10 have followed up.
11   Q.  Right.  So it was waiting on Santander to say
12 do the next step?
13   A.  Correct.  To confirm the written instruction
14 for how the return was going to take place.
15   Q.  How did Allstar get paid in this case?
16   A.  PK Willis paid them, according to the invoice
17 they submit under the terms of our contract.
18   Q.  Do you know how much that was?
19   A.  Their fee would have been ███.  We don't
20 actually have a copy of the invoice that was paid to
21 them, and they are paid in bulk transactions.  But it
22 would have been the ███, and it would have been the, I
23 believe, $██ was the storage fee, somewhere in the $██
24 area.  It would have been a pass-through fee to the
25 agent.

Page 55

1    Q.  Do you know if they got paid for bringing the
2  car back, not just for the repo?
3       MR. SPRINGFIELD:  Object to the form.  Assumes
4  facts not in evidence.  You can answer, if you know.
5       THE WITNESS:  I'm not clear on whether the
6  money actually exchanged hands.  But I believe they
7  billed us, and I believe we paid them.
8  BY MR. HUBBARD:
9    Q.  Do you know how much that would be?
10   A.  $██ quoted.
11   Q.  Do you know or are you aware of any PK Willis
12 employee breaching any of PK Willis' procedures with
13 this account?
14   A.  Not at all.
15   Q.  And no one has been disciplined or reprimanded
16 or anything?
17   A.  Certainly not.
18       MR. SPRINGFIELD:  With respect to this account?
19 BY MR. HUBBARD:
20   Q.  With respect to this account, yes.
21       I'm going to show you one more.
22       (Exhibit 15 was
23        marked for identification.)
24 BY MR. HUBBARD:
25   Q.  What is this, if you know?

Page 56

1    A.  I haven't seen this before.  Mind if I review
2  it?
3    Q.  Yeah.
4       MR. SPRINGFIELD:  For the record, you're
5  referring to Allstar-Prosch 24?
6       MR. HUBBARD:  Correct.
7       THE WITNESS:  Okay.
8  BY MR. HUBBARD:
9    Q.  As far as PK Willis goes, who is Christina?
10   A.  Christina is a representative in the redemption
11 department.
12   Q.  And is Ms. Pam, is she an Allstar employee or a
13 PK Willis?
14   A.  It appears that she's an Allstar employee.
15   Q.  If you go back to the line that says, "She is
16 going to send a hold harmless also with $██ take-back
17 fee," I believe we referenced that earlier.  Do you know
18 if that fee was ever sent?
19   A.  I do not know whether or not they were actually
20 paid, but it was an authorized fee and would have been
21 valid to have been paid.
22   Q.  Do you know if there would be a receipt
23 anywhere on that?
24   A.  We were not able to locate a receipt.  I assume
25 Allstar will have those records.

**Steven Schelk - CONFIDENTIAL** 15 (57 - 60)

| Page 57 | Page 59 |
|---|---|

**Page 57**

1  Q. The take-back, what does that refer to, the
2  consumer or the lot in North Port or what, if you know?
3  (Clarification by the reporter.)
4  THE WITNESS: The take-back from the Allstar
5  lot to the customer.
6  BY MR. HUBBARD:
7  Q. As far as you know, Allstar would have been
8  paid this but never actually contacted Mr. Prosch to
9  give his car back, if you know?
10  MR. SPRINGFIELD: Object to the form. Calls
11  for speculation. You can answer if you knew what they
12  knew.
13  THE WITNESS: No, it was a preauthorized fee.
14  So when they are asked to take a vehicle back to
15  somebody in the field, as opposed to having somebody
16  come to their lot to pick it up, they need to be paid a
17  tow fee to tow the vehicle back to the customer. So
18  once they receive the release authorizing them to take
19  the vehicle back, and it was successfully taken back,
20  and the release was signed or otherwise noted, then they
21  would be in receipt of the $███ fee. So they did not
22  have an opportunity to get the fee until the date the
23  release was sent.
24  MR. HUBBARD: All right. That's all I have.
25  EXAMINATION

**Page 58**

1  BY MR. SPRINGFIELD:
2  Q. I just have one follow-up question. On Exhibit
3  15, the $███ fee you said was to take the vehicle from
4  Allstar to the owner of the vehicle?
5  A. The customer, correct.
6  Q. If the customer went and picked it up at the
7  lot, would that fee be charged?
8  A. No.
9  MR. SPRINGFIELD: That's all that I have.
10  MR. HUBBARD: That's it.
11  THE REPORTER: Do you want a copy?
12  MR. SPRINGFIELD: Yes, electronic copy is fine.
13  MR. SEALS: Yes, please.
14  (The deposition concluded at 11:27 a.m.)
15  * * *
16
17
18
19
20
21
22
23
24
25

**Page 59**

1  DECLARATION UNDER PENALTY OF PERJURY
2
3  I, STEVEN SCHELK, do hereby certify under penalty
4  of perjury that I have read the foregoing transcript of
5  my deposition taken on September 28, 2017; that I have
6  made such corrections as appear noted herein in ink,
7  initialed by me; that my testimony as contained herein,
8  as corrected, is true and correct.
9
10  DATED this _____ day of _____, 2017,
11  at _____ , California.
12
13
14
15  _____
   STEVEN SCHELK
16
17
18
19
20
21
22
23
24
25

**Page 60**

1  REPORTER'S CERTIFICATION
2
3  I, JENNIFER SCHUMACHER, a Certified Shorthand
4  Reporter in and for the State of California, do hereby
5  certify:
6
7  That the foregoing witness was by me duly sworn;
8  that the deposition was then taken before me at the time
9  and place herein set forth; that the testimony and
10  proceedings were reported stenographically by me and
11  later transcribed into typewriting under my direction;
12  that the foregoing is a true record of the testimony and
13  proceedings taken at that time.
14
15  IN WITNESS WHEREOF, I have subscribed my name this
16  October 10, 2017.
17
18
19  _____
20  JENNIFER SCHUMACHER, CSR No. 9763
21
22
23
24
25

Page 61

1        DEPOSITION ERRATA SHEET

2   Our Assignment No. 644416
    Case Caption: CHRIS PROSCH vs. SANTANDER CONSUMER USA,
3   INC.
    Witness: STEVEN SCHELK
4   Date of Deposition: September 28, 2017

5        DECLARATION UNDER PENALTY OF PERJURY

6       I declare under penalty of perjury that I have read
    the entire transcript of my Deposition taken in the
7   captioned matter or the same has been read to me, and
    the same is true and accurate, save and except for
8   changes and/or corrections, if any, as indicated by me
    on the DEPOSITION ERRATA SHEET hereof, with the
9   understanding that I offer these changes as if still
    under oath.

10      Signed on the _____ day of _____, 20____.

11   _____

12   STEVEN SCHELK

13        DEPOSITION ERRATA SHEET

14

15   Page No._____Line No._____Change to:_____

16   _____

17   Reason for change:_____

18   Page No._____Line No._____Change to:_____

19   _____

20   Reason for change:_____

21   Page No._____Line No._____Change to:_____

22   _____

23   Reason for change:_____

24   Page No._____Line No._____Change to:_____

25   _____

Page 62

1   Reason for change:_____

2   Page No._____Line No._____Change to:_____

3   _____

4   Reason for change:_____

5   Page No._____Line No._____Change to:_____

6   _____

7   Reason for change:_____

8   Page No._____Line No._____Change to:_____

9   _____

10   Reason for change:_____

11   Page No._____Line No._____Change to:_____

12   _____

13   Reason for change:_____

14   Page No._____Line No._____Change to:_____

15   _____

16   Reason for change:_____

17   Page No._____Line No._____Change to:_____

18   _____

19   Reason for change:_____

20   Page No._____Line No._____Change to:_____

21   _____

22   Reason for change:_____

23

24   SIGNATURE:_____DATE:_____

25      STEVEN SCHELK

**FILED**
2017 Jun-06 PM 12:52
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | |
|---|---|
| **CHRIS PROSCH,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **CIVIL ACTION NO.** |
| ) | **7:16-cv-1494-LSC** |
| **SANTANDER CONSUMER USA** ) | |
| **INC.; ALLSTAR RECOVERY,** ) | |
| **LLC; PATRICK K. WILLIS** ) | |
| **COMPANY, INC. DBA** ) | |
| **AMERICAN RECOVERY** ) | |
| **SERVICES,** ) | |
| ) | |
| **Defendants.** ) | |

### PATRICK K. WILLIS COMPANY, INC.'S AMENDED ANSWER AND
### AFFIRMATIVE DEFENSES TO COMPLAINT

COMES NOW defendant Patrick K. Willis Company, Inc. ("PKW" or

"Defendant"), by and through its undersigned counsel, and for its Amended

Answer to the Complaint of plaintiff Chris Prosch ("Plaintiff"), states as follows:

### PARTIES

1.      Defendant is without sufficient information and knowledge to admit

or deny the allegations in paragraph 1 of the Complaint and, therefore, denies same

and demands strict proof thereof.

2.      Defendant admits, upon information and belief, that Santander

Consumer USA Inc. is incorporated under the laws of the State of Illinois and that

29574905 v1



it is registered to do business in Alabama.  Except as expressly admitted herein, Defendant is without sufficient information and knowledge to admit or deny the allegations in paragraph 2 of the Complaint, and, therefore, denies same and demands strict proof thereof.

3.      Defendant is without sufficient information and knowledge to admit or deny the allegations in paragraph 3 of the Complaint and, therefore, denies same and demands strict proof thereof.

4.      In response to the first sentence of paragraph 4 of the Complaint, Defendant admits that it is a foreign entity.  Defendant is without sufficient information and knowledge to either admit or deny the remainder of the first sentence of paragraph 4 of the Complaint and, therefore, denies the same and demands strict proof thereof.  In response to the second sentence of paragraph 4, Defendant admits that part of its business is non-judicial repossession of automobiles.  The remainder of the second sentence of paragraph 4 contains a legal conclusion to which Defendant is not required to respond.  To the extent a response is required, Defendant denies the remaining allegations of the second sentence of paragraph 4 and demands strict proof thereof.

## JURISDICTION AND VENUE

5.      In response to the first sentence of paragraph 5, Defendant admits that the statutes referenced therein confer subject matter jurisdiction but denies that

jurisdiction is appropriate as to Defendant because it has not violated any law.  In response to the second sentence of paragraph 5, Defendant is without sufficient information and knowledge to admit or deny whether Plaintiff resides in this district, and, therefore, denies the same and demands strict proof thereof. The remainder of the second sentence of paragraph 5 contains a legal conclusion to which Defendant is not required to respond.  To the extent a response is required, Defendant denies the allegations of the second sentence of paragraph 5 and demands strict proof thereof.

## FACTUAL ALLEGATIONS

6.      Defendant is without sufficient information and knowledge to admit or deny the allegations in paragraph 6 of the Complaint and, therefore, denies same and demands strict proof thereof.

7.      Defendant is without sufficient information and knowledge to admit or deny the allegations in paragraph 7 of the Complaint and, therefore, denies same and demands strict proof thereof.

8.      Defendant is without sufficient information and knowledge to admit or deny the allegations in paragraph 8 of the Complaint and, therefore, denies same and demands strict proof thereof.

9.      Defendant admits that Santander Consumer USA Inc. contracted with Defendant to retain Allstar Recovery, LLC to arrange for the vehicle to be

repossessed based on a security interest. Except as expressly admitted herein, Defendant denies the allegations of paragraph 9 and demands strict proof thereof.

10. Defendant admits that it did not notify Plaintiff prior to the repossession and that Allstar Recovery, LLC took possession of the vehicle on or about June 9, 2016. Except as expressly admitted herein, Defendant denies the allegations of paragraph 10 and demands strict proof thereof.

11. Defendant is without sufficient information and knowledge to admit or deny the allegations in paragraph 11 of the Complaint and, therefore, denies same and demands strict proof thereof.

12. Defendant is without sufficient information and knowledge to admit or deny the allegations in paragraph 12 of the Complaint and, therefore, denies same and demands strict proof thereof.

13. Defendant is without sufficient information and knowledge to admit or deny the allegations in paragraph 13 of the Complaint and, therefore, denies same and demands strict proof thereof.

14. Defendant is without sufficient information and knowledge to admit or deny the allegations in paragraph 14 of the Complaint and, therefore, denies same and demands strict proof thereof.

15. Defendant denies the allegations of paragraph 15 and demands strict proof thereof.

16.     Defendant is without sufficient information and knowledge to admit or deny the allegations in paragraph 16 of the Complaint and, therefore, denies same and demands strict proof thereof.

17.     Admitted.

## COUNT ONE

### NEGLIGENCE CLAIM AGAINST DEFENDANTS

18.     Defendant reasserts and reincorporates its responses to the preceding paragraphs as if fully set forth herein.

19.     Defendant admits that it is not allowed to issue a repossession order for a vehicle for which Santander Consumer USA Inc. ("SC") does not have a present security interest.  Except as expressly admitted herein, Defendant denies the allegations of paragraph 19 and demands strict proof thereof.

20.     Defendant admits that Plaintiff's vehicle was improperly repossessed by SC not having a present security interest in Plaintiff's vehicle at the time it was repossessed.     Except as expressly admitted herein, Defendant denies the allegations of paragraph 20 and demands strict proof thereof.

21.     Defendant admits that, as a result of Defendants' conduct, Plaintiff was deprived of his vehicle for a period of approximately 50 days. Except as expressly admitted herein, Defendant denies the allegations of paragraph 21 of the Complaint and demands strict proof thereof.

## COUNT TWO

### WANTONNESS CLAIM AGAINST DEFENDANTS

22.    Defendant reasserts and reincorporates its responses to the preceding paragraphs as if fully set forth herein.

23.    Defendant denies the allegations of paragraph 23 of the Complaint and demands strict proof thereof.

24.    Defendant denies the allegations of paragraph 24 of the Complaint and demands strict proof thereof.

25.    Defendant denies the allegations of paragraph 25 of the Complaint and demands strict proof thereof.

## COUNT THREE

### CONVERSION CLAIM AGAINST DEFENDANTS

26.    Defendant reasserts and reincorporates its responses to the preceding paragraphs as if fully set forth herein.

27.    Admitted.

28.    Defendant admits that, due to a coding error by SC, SC assigned the subject vehicle for repossession to Defendant, that Defendant then issued a repossession order for Plaintiff's vehicle to Allstar Recovery, LLC, that Plaintiff's vehicle was repossessed by Allstar Recovery, LLC, and that, as a result, Plaintiff was deprived of possession of the vehicle for a period of approximately 50 days

without his consent. Except as expressly admitted herein, Defendant denies the allegations of paragraph 28 of the Complaint and demands strict proof thereof.

29.     Defendant denies the allegations of paragraph 29 of the Complaint and demands strict proof thereof.

30.     Defendant admits that, as a result of Defendants' conduct, Plaintiff was deprived of his vehicle for a period of approximately 50 days. Except as expressly admitted herein, Defendant denies the allegations of paragraph 30 of the Complaint and demands strict proof thereof.

## COUNT FOUR

## NEGLIGENT TRAINING AND SUPERVISION AGAINST DEFENDANTS

31.     Defendant reasserts and reincorporates its responses to the preceding paragraphs as if fully set forth herein.

32.     Defendant denies the allegations of paragraph 32 of the Complaint and demands strict proof thereof.

33.     Defendant denies the allegations of paragraph 33 of the Complaint and demands strict proof thereof.

34.     Defendant denies the allegations of paragraph 34 of the Complaint and demands strict proof thereof.

35.     Defendant denies the allegations of paragraph 35 of the Complaint and demands strict proof thereof.

## COUNT FIVE

### RECKLESS AND WANTON TRAINING

### AND SUPERVISION AGAINST DEFENDANTS

36.     Defendant reasserts and reincorporates its responses to the preceding paragraphs as if fully set forth herein.

37.     Defendant denies the allegations of paragraph 37 of the Complaint and demands strict proof thereof.

38.     Defendant denies the allegations of paragraph 38 of the Complaint and demands strict proof thereof.

39.     Defendant denies the allegations of paragraph 39 of the Complaint and demands strict proof thereof.

40.     Defendant denies the allegations of paragraph 40 of the Complaint and demands strict proof thereof.

## COUNT SIX

### VIOLATION OF U.C.C. AGAINST DEFENDANT SANTANDER

41.     Defendant reasserts and reincorporates its responses to the preceding paragraphs as if fully set forth herein.

42.     The allegations of paragraph 42 are not directed at Defendant, and, therefore, no response is required.  To the extent a response is required, Defendant

denies the allegations of paragraph 42 of the Complaint and demands strict proof thereof.

43.    The allegations of paragraph 43 are not directed at Defendant, and, therefore, no response is required.  To the extent a response is required, Defendant denies the allegations of paragraph 43 of the Complaint and demands strict proof thereof.

44.    Defendant denies the allegations of paragraph 44 of the Complaint and demands strict proof thereof.

<div align="center">

**COUNT SEVEN**

**FDCPA CLAIM AGAINST DEFENDANTS**

**ALLSTAR RECOVERY AND ARS**

</div>

45.    Defendant reasserts and reincorporates its responses to the preceding paragraphs as if fully set forth herein.

46.    Defendant admits that, due to a coding error by SC, SC assigned the subject vehicle for repossession to Defendant, that Defendant then issued a repossession order for Plaintiff's vehicle to Allstar Recovery, LLC, that Plaintiff's vehicle was repossessed by Allstar Recovery, LLC, and that, as a result, Defendant effected the dispossession of Plaintiff's vehicle without the present right of possession. Except as expressly admitted herein, Defendant denies the allegations of paragraph 46 of the Complaint and demands strict proof thereof.

47.     Defendant admits that, due to a coding error by SC, SC assigned the subject vehicle for repossession to Defendant, that Defendant then issued a repossession order for Plaintiff's vehicle to Allstar Recovery, LLC, that Plaintiff's vehicle was repossessed by Allstar Recovery, LLC, and that, as a result, Defendant effected the dispossession of Plaintiff's vehicle without the present right of possession. Except as expressly admitted herein, Defendant denies the allegations of paragraph 47 of the Complaint and demands strict proof thereof.

48.     Defendant admits that, as a result of Defendants' conduct, Plaintiff was deprived of his vehicle for a period of approximately 50 days. Except as expressly admitted herein, Defendant denies the allegations of paragraph 48 of the Complaint and demands strict proof thereof.

## COUNT EIGHT

### INVASION OF PRIVACY AGAINST ALLSTAR RECOVERY AND ARS

49.     Defendant reasserts and reincorporates its responses to the preceding paragraphs as if fully set forth herein.

50.     Defendant admits that 15 U.S.C. § 1692(a) speaks for itself. Otherwise, denied.

51.     Defendant denies the allegations of paragraph 51 of the Complaint and demands strict proof thereof.

52.     Defendant denies the allegations of paragraph 52 of the Complaint and demands strict proof thereof.

53.     Defendant denies the allegations of paragraph 53 of the Complaint and demands strict proof thereof.

54.     Defendant denies the allegations of paragraph 54 of the Complaint and demands strict proof thereof.

## AMOUNT OF DAMAGES DEMANDED

55.     Defendant denies that Plaintiff is entitled to compensatory damages, punitive damages, or any other relief whatsoever and demands strict proof thereof.

56.     Defendant denies that Plaintiff is entitled to any remedies under Ala. Code § 7-9A-625 or any other U.C.C. remedy and demands strict proof thereof.

57.     Defendant denies that Plaintiff is entitled to statutory damages, costs, attorney's fees, compensatory damages, or any other relief whatsoever and demands strict proof thereof.

58.     Defendant denies that Plaintiff is entitled to any relief from Defendant and demands strict proof thereof.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

To the extent that Plaintiff has entered into an arbitration agreement that covers any of his claims against Defendant, Defendant reserves the right to compel arbitration and does not waive that right by filing this Answer.

### SECOND DEFENSE

Plaintiff's claims fail to state a claim upon which relief can be granted.

### THIRD DEFENSE

Plaintiff's claims are barred by the applicable statute of limitations.

### FOURTH DEFENSE

This Court lacks personal jurisdiction over Defendant.

### FIFTH DEFENSE

Venue was improperly laid.

### SIXTH DEFENSE

Plaintiff's claims are barred by the doctrines of release, waiver, unclean hands, and estoppel.

### SEVENTH DEFENSE

Defendant asserts the defenses of good faith and lack of malice.

## EIGHTH DEFENSE

Plaintiff's claims are barred by the doctrines of accord and satisfaction, ratification, consent and acquiescence.

## NINTH DEFENSE

Defendant's actions were justified and reasonable.

## TENTH DEFENSE

Plaintiff's FDCPA claim against PKW fails as a matter of law because PKW is not a "debt collector" under the FDCPA.

## ELEVENTH DEFENSE

Any violation of the law, which Defendant denies, was not intentional and resulted, if at all, from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid such errors.

## TWELFTH DEFENSE

Defendant's conduct was in good faith and in conformity with a formal opinion of the Federal Trade Commission and/or an advisory opinion of the Bureau of Consumer Financial Protection.

## THIRTEENTH DEFENSE

Plaintiff's claims are barred by the doctrines of judicial estoppel, collateral estoppel, and *res judicata.*

## FOURTEENTH DEFENSE

The claims asserted by Plaintiff against Defendant are barred by any bankruptcy case filed by Plaintiff, based on the doctrines of *res judicata* and judicial estoppel, 11 U.S.C. § 1327(a), 11 U.S.C. § 704, 11 U.S.C. § 541. Moreover, as a result of any such prior proceedings, Plaintiff is not the real party in interest to bring the present claims and lacks standing to pursue the causes of action.

## FIFTEENTH DEFENSE

Plaintiff's claims must fail to the extent that Plaintiff failed to mitigate damages, if any, and/or failed to act with reasonable diligence.

## SIXTEENTH DEFENSE

Defendant did not owe a duty of care to Plaintiff.

## SEVENTEENTH DEFENSE

Defendant did not breach any alleged duty owed to Plaintiff.

## EIGHTEENTH DEFENSE

Defendant denies that it is guilty of any wrongdoing, either negligent, wanton, willful, or otherwise.

## NINETEENTH DEFENSE

Plaintiff's claims are barred in whole or in part due to his own negligence.

### TWENTIETH DEFENSE

Any violation of the law or damage suffered by Plaintiff, which Defendant denies, was due to the affirmative actions and/or omissions of Plaintiff and does not give rise to any liability of Defendant.

### TWENTY-FIRST DEFENSE

Plaintiff's injuries were the result of an intervening or superseding cause or the acts or omissions of third parties over which Defendant had no responsibility or control and for which Defendant may not be held liable.

### TWENTY-SECOND DEFENSE

Defendant pleads the defense of lack of causal relation between its conduct and the damages alleged.

### TWENTY-THIRD DEFENSE

Plaintiff cannot recover for mental pain and suffering, emotional distress, or similar damages, if any, in that there is no fixed, objective, and/or clear and consistent standard under applicable state law for ascertaining the amount thereof, such that any award of said damages against Defendant would violate the Fifth and Fourteenth Amendments to the United States Constitution and Article 1, Section 6 of the Alabama Constitution, which prohibit deprivation of life, liberty, or property, except by due process.

### TWENTY-FOURTH DEFENSE

Plaintiff's Complaint fails to state a claim for which punitive damages may be awarded.

### TWENTY-FIFTH DEFENSE

Defendant avers that an award of punitive damages in this case would serve no purpose for which punitive damages can be awarded in Alabama.

### TWENTY-SIXTH DEFENSE

Plaintiff's claims for punitive damages against Defendant cannot be upheld to the extent they are in violation of any law passed by the United States Congress or the Alabama Legislature limiting awards of punitive damages or the amount of such damages.

### TWENTY-SEVENTH DEFENSE

Plaintiff's claims for punitive damages against Defendant cannot be upheld, because an award of punitive damages under Alabama law for the purpose of compensating Plaintiff for elements of damage not otherwise recognized by Alabama law would violate Defendant's due process rights guaranteed by the United States Constitution and by the due process provisions of the Alabama Constitution.

## TWENTY-EIGHTH DEFENSE

To the extent not otherwise encompassed by the defenses asserted above, Plaintiff's claims for punitive damages are further barred, in whole or in part, to the extent an award of any such punitive damages would be violative of the United States Constitution or the Alabama Constitution.

## TWENTY-NINTH DEFENSE

Punitive damages cannot be upheld to the extent they violate or contravene the holding of the United States Supreme Court in the cases of *BMW v. Gore*, 517 U.S. 559 (1996), *Cooper Indus., Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424 (2001) and *State Farm Mut. Automobile Ins. Co. v. Campbell*, 538 U.S. 408 (2003).

## RESERVATION OF DEFENSES

Defendant reserves the right to assert additional defenses as discovery progresses in this case. To the extent that any of the foregoing allegations in the complaint have not been expressly admitted or denied, they are hereby denied.

Respectfully submitted,

*s/ Rachel R. Friedman*
R. Frank Springfield (SPR024)
Rachel R. Friedman (FRI045)
BURR & FORMAN LLP
420 North 20th Street
Suite 3400

Birmingham, AL  35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100
fspringf@burr.com
rfriedman@burr.com

Attorneys for Defendants
SANTANDER CONSUMER USA INC.,
PATRICK K. WILLIS COMPANY, INC., &
ALLSTAR RECOVERY, LLC

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing document by

CM/ECF Notice of Electronic Filing on this the 6th day of June, 2017 to:

John C. Hubbard
John C. Hubbard LLC
P.O. Box 953
Birmingham, AL 35203
jch@jchubbardlaw.com

W. Whitney Seals
Pate & Cochrun LLP
PO Box 10448
Birmingham, AL 35202
filings@plc-law.com

s/ Rachel R. Friedman
OF COUNSEL

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

| | | |
|---|---|---|
| **CHRIS PROSCH,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | |
| **v.** | ) | **7:16-CV-01494-LSC** |
| | ) | |
| **SANTANDER CONSUMER USA,** | ) | |
| **INC., ET AL;** | ) | |
| | ) | |
| **DEFENDANTS.** | ) | |

## SECOND AMENDED NOTICE TO TAKE DEPOSITION OF 30(b)(6) CORPORATE REPRESENTATIVE OF DEFENDANT PATRICK K. WILLIS COMPANY, INC.

Take notice, that the Plaintiff will take the deposition of the following entities or individuals pursuant to the Rules of Civil Procedure. The deponent(s) must bring all documents listed in this deposition notice and any attachments, and present the originals of these documents for inspection and copying at the deposition. The deposition will continue until completed.

| | |
|---|---|
| **DEPONENT:** | **Corporate Representative(s) of Patrick K. Willis Company, Inc.** |
| **DATE:** | **September 28, 2017** |
| **TIME:** | **10:00 AM PDT** |
| **PLACE:** | **Esquire Solutions** |
| | **2151 River Plaza Drive, Suite 300** |
| | **Sacramento, CA 95833** |

EXHIBIT Schill

2

9 2 8 7 7

Please note that pursuant to the Rules of Civil Procedure 30(b)(5) & (6), this corporate Defendant must designate an individual to testify as to the following matters:

1.    The Defendant's investigation into the claims made by Plaintiff in the Complaint.

2.    The allegations of the Complaint and any amendments thereto.

3.    The details and contents of all Defendant's personnel files of any person who was involved in any collection activities involving the Plaintiff's vehicle, the decision to repossess the Plaintiff's vehicle, or the post-repossession activities of Defendants with regard to Plaintiff's vehicle.

4.    All documentation methods, if any, whether computerized, manual, or other, of all activities undertaken by the Defendant or its employees or agents related to the repossession of Plaintiff's vehicle or the incidents made the basis of Plaintiff's Complaint.

5.    Any correspondence between this Defendant and Plaintiff or any other Defendants.

6.    The factual basis for the Defendant's Answer (and any amendments).

7.    The factual basis for the Defendant's defenses and affirmative defenses contained in the Answer (and any amendments).

8.    The maintenance of procedures by Defendant to avoid repossession of vehicles that there is no right to repossess.

9.    All documents produced to Plaintiff by Defendant in the course of this case.

10.   The history, specific details, and resolution of any formal and informal consumer-initiated complaints, Better Business Bureau Complaints, lawsuits, regulatory actions, claims, litigations,

mediations, arbitrations, Commerce department actions, or other actions, legal or otherwise, connected to or arising out of Defendants' repossession of vehicles that it has no right to repossess, in the period from three (3) years prior to the date of this notice to the present.

11. All communications between you and any other Defendant in this case in any way related to Plaintiff.

12. All discovery responses by Defendant to any discovery requests.

13. The relationship or contractual agreements between Patrick K. Willis Company, Inc. and any other Defendant relating to the repossession of automobiles.

14. The policies, procedures and practices put in place by the Defendant to ensure that it would not repossess vehicles there was no right to repossess.

15. The net worth of Defendant.

16. The nature and content of any records maintained by the Defendant-including archived copies and recorded conversations--relating to the repossession of Plaintiff's vehicle.

17. Any communications between this Defendant and any other Defendant relating to the repossession of Plaintiff's vehicle made the basis of this lawsuit.

18. The existence and content of any policy or procedure for repossessions of vehicles that Defendant has no right to repossess.

19. The identity of any known witnesses to the allegations of fact stated in the complaint or the affirmative defenses asserted by the Defendant.

20. The general nature of Defendant's business.

21.   Any communications between the Defendant and the Plaintiff relating to the incidents made the basis of this suit.

22.   Any releases or waivers signed by the Plaintiff.

23.   The amount of money paid to this Defendant or by this Defendant relating to the repossession of Plaintiff's vehicle.

### DUCES TECUM

**PLEASE TAKE FURTHER NOTICE** that, the designated representative(s) of Defendant must bring the following documents with them to the deposition: All documents responsive to the Request for Production of Documents and documents related to the topics referenced above.

/S/ JOHN C. HUBBARD
JOHN C. HUBBARD
Attorney for Plaintiff

**OF COUNSEL:**
**JOHN C. HUBBARD, LLC**
PO Box 953
Birmingham, AL 35201
(205) 378-8121
jch@jchubbardlaw.com

### CERTIFICATE OF SERVICE

I hereby certify that on this the 25 day of August, 2017, the foregoing was sent via e-mail to the following:

R. Frank Springfield, Esq.
Rachel R. Friedman, Esq.
Burr & Forman, LLP
420 North 20<sup>th</sup> Street, Ste. 3400
Birmingham, AL 35203

/S/ JOHN C. HUBBARD

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| CHRIS PROSCH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO. |
| | ) | 7:16-cv-1494-LSC |
| SANTANDER CONSUMER USA | ) | |
| INC.; ALLSTAR RECOVERY, | ) | |
| LLC; PATRICK K. WILLIS | ) | |
| COMPANY, INC. DBA | ) | |
| AMERICAN RECOVERY | ) | |
| SERVICES, | ) | |
| | ) | |
| Defendants. | ) | |

## PATRICK K. WILLIS COMPANY, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST INTERROGATORIES TO DEFENDANT PATRICK K. WILLIS COMPANY, INC.

COMES NOW Defendant Patrick K. Willis Company, Inc. doing business as American Recovery Service ("ARS" or "Defendant") by and through its undersigned counsel and pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, responds to Plaintiff's First Interrogatories to Defendant Patrick K. Willis Company, Inc. as follows:

### INTERROGATORIES

### INTERROGATORY NO. 1:

Provide the job title and last known address of the person(s) most knowledgeable regarding the following:

29299349 v2

(a)     Repossession activities of ARS;

(b)     Letters or phone calls directed by ARS and any of their affiliates to the Plaintiff or co-Defendants;

(c)     Employees and/or Agents of ARS who had any contact with the Vehicle or Vehicle's account;

(d)     Employees and/or Agents of ARS Recovery and supervisors who dealt with, reviewed or made decisions concerning the Vehicle.

**RESPONSE NO. 1:**

Defendant objects to the above interrogatory on the grounds that it seeks information that is irrelevant to the issues in this lawsuit and is not relevant to the parties' claims and defenses. Defendant objects to the above request as overly broad and vague. Defendant objects to this interrogatory to the extent it requires Defendant to test its employees. Subject to and without waiving the foregoing objections, Steven Schelk is the Chief Risk Officer of Defendant and can be contacted through Defendant's counsel of record. The following current and former employees of Defendant have accessed the account associated with the subject repossession: Nisha Singh (LPR Dispatch), Jessica Roth (CSR Lead), Amanda Wherle (CSR), Aliza Bignami (CSR Lead), Sheena Williams (LPR), Brian Arteaga (CSR), Bonnie Doerr (Redemptions), Priscillia Quiroz (CSR), Christina Trujillo (Redemptions), Mike Young (Redemptions), Denise Abel (Redemptions), and

Yolanda Holliday (Redemptions). Jessica Roth, Brian Arteaga, Mike Young, Aliza Bignami and Yolanda Holliday are currently employed with Defendant and can be contacted through Defendant's counsel of record.   Nisha Singh is no longer employed with Defendant and her last known address is ██████████████ ██████████████.  Priscilla Quiroz is no longer employed with Defendant and her last known address is █████████████████████████ Christina Trujillo is no longer employed with Defendant and her last known address is ████████████████████. Denise Abel is no longer employed with Defendant and her last known address is ████████████ ████████ Amanda Wherle is no longer employed with Defendant and her last known address is ██████████████████.  Bonnie Doerr is no longer employed with Defendant and her last known address is ████████████ ████████████ Sheena Williams is no longer employed with Defendant and her last known address is ██████████████████

**INTERROGATORY NO. 2:**

List each and every communication between you and any other agent, officer, or employee of the company and the Plaintiff or members of his household or his representatives; state the date of the communication, the author of the communication, the contents of the communication, and whether the communication was oral or written.

**RESPONSE NO. 2:**

Defendant objects to the above interrogatory as overly broad. Defendant objects to the above interrogatory on the grounds that it seeks information that is irrelevant to the issues in this lawsuit and is not relevant to the parties' claims and defenses.  Subject to and without waiving the foregoing objections, Defendant states that Yolanda Holliday spoke with Plaintiff over the telephone on July 28, 2016.  On that date, Plaintiff called Defendant stating he was the owner of the vehicle.  After he verified the VIN, he was given Santander Consumer USA Inc.'s ("SC") telephone number.  No other employees of Defendant are believed to have spoken with Plaintiff or any members of his household. Pursuant to Fed. R. Civ. P. 33(d), Defendant refers Plaintiff to the documents produced herein, including its account notes, from which the answer to this interrogatory can be ascertained.

**INTERROGATORY NO. 3:**

State in detail everything you know of the contents of the contact and state the date of each oral or written communication to the Plaintiff made by any officer, agent or employee of ARS.

**RESPONSE NO. 3:**

*See* Defendant's Response to Interrogatory No. 2.

## INTERROGATORY NO. 4:

State the name, address, date of communication, content of communication of each and every report or communication made by ARS to any other person or entity concerning the repossession of the Vehicle.

## RESPONSE NO. 4:

Defendant objects to the above interrogatory as overly broad and unduly burdensome. Defendant objects to the above interrogatory on the grounds that it seeks information that is irrelevant to the issues in this lawsuit and is not relevant to the parties' claims and defenses.  Defendant objects to this interrogatory to the extent it seeks information that is protected by the attorney-client privilege or work-product doctrine or which is confidential and/or proprietary in nature. Subject to and without waiving the foregoing objections, Defendant received the subject repossession order from SC on May 9, 2016.  On June 8, 2016, Defendant was informed that the vehicle had been located via an LPR (License Plate Recognition) Hit by Allstar Recovery, LLC ("Allstar"). Nisha Singh, Defendant's LPR dispatcher, confirmed the vehicle to be an active LPR assignment and then issued an order of repossession to Allstar to repossess the vehicle.  On June 8, 2016, Allstar repossessed the vehicle and submitted a Condition Report to Defendant.

On June 21, 2016, Defendant received an e-mail from SC, stating that SC no longer had a lien on the vehicle and instructing Defendant to arrange for the vehicle to be returned to the owner. In the e-mail, SC sent Defendant a release for ADESA Atlanta to sign upon return of the vehicle to Allstar. Subsequently, on that date, Defendant communicated with Allstar regarding the vehicle, and was informed that the unit had been taken on that date to the auction lot. On June 27, 2016, Allstar contacted Defendant regarding a Hold Harmless agreement, and Defendant requested the Hold Harmless agreement from SC.   Later that day, Defendant received the Hold Harmless agreement from SC and sent it to Allstar via fax and email. On July 6, 2016, Allstar contacted Defendant asking about signing paperwork related to the repossession and stating that the vehicle had been returned from the auction. Defendant advised Allstar that it was waiting for the address for the vehicle to be returned to.   On July 28, 2016, Defendant sent two release documents to Allstar and instructed Allstar to process the release.   On July 28, 2016, Plaintiff contacted Defendant regarding the vehicle and he was given SC's phone number after he verified the VIN.   Pursuant to Fed. R. Civ. P. 33(d), Defendant refers Plaintiff to the documents produced in response to Plaintiff's Requests for Production, including its account notes and any communications with the co-defendants, from which the answer to this interrogatory can be ascertained.

**INTERROGATORY NO. 5:**

List and describe the identity and location of all the policies, procedures and guidelines, or any other written or electronic documents, however named, regarding repossession activities, specifically how ARS determines if a repossession order is still active.

**RESPONSE NO. 5:**

Defendant objects to the above interrogatory on the grounds that it is overly broad and unduly burdensome. Defendant objects to the above interrogatory on the grounds that it seeks information that is irrelevant to the issues in this lawsuit and is not relevant to the parties' claims and defenses. Defendant objects to the foregoing interrogatory on the grounds that it assumes facts not in evidence. Defendant objects to this interrogatory to the extent it seeks information that is protected by the attorney-client privilege or work-product doctrine or which is confidential and/or proprietary in nature. Subject to and without waiving the foregoing objections, and pursuant to Fed. R. Civ. P. 33(d), Defendant refers Plaintiff to the policies produced in response to Plaintiff's Requests for Production, including its policies regarding conducting account reviews, vendor management, account scrubs, documentation and recovery of personal property, field agency assessments and assignments, field agency compliance with state laws, and field agency audits that were in effect during the time period at issue.

## INTERROGATORY NO. 6:

State the name, address and qualifications of any and all experts you have retained, hired or consulted in the preparation of the above-styled cause.

(a)    State the subject matter on which any and all such expert witnesses are expected to testify.

(b)    Summarize the substance of the facts and opinions to which any such expert witness is expected to testify, including in that summary the grounds for each opinion.

(c)    List all texts, articles, manuals, or any other materials used by the expert in preparation of this matter.

## RESPONSE NO. 6:

Defendant objects to the extent this interrogatory seeks information and/or documents protected by the attorney-client privilege and attorney work product doctrine.  Subject to and without waiving the foregoing objection, Defendant states that, at the present time, Defendant has not made any decisions regarding witnesses that it may utilize at the trial of this matter. Defendant will comply with the Federal Rules of Civil Procedure and any scheduling order entered by the Court in this matter.

**INTERROGATORY NO. 7:**

State the name and address of any and all witnesses that ARS has contacted in connection with this case including, but not limited to, those that are expected to testify at the trial of this case.

**RESPONSE NO. 7:**

*See* Defendant's Response to Interrogatory No. 6.

**INTERROGATORY NO. 8:**

State the names, addresses, telephone numbers and places of employment of all persons who have factual knowledge regarding the facts and circumstances involving this lawsuit.

**RESPONSE NO. 8:**

Defendant objects to this Interrogatory to the extent it seeks the personal information of third parties without their consent. Defendant further objects to this Interrogatory on the grounds that it is not reasonably limited in time, scope, and/or subject matter and, therefore, is overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Defendant states that discovery is in the early stages. Notwithstanding this fact, Defendant believes the following individuals may have discoverable information relating to the facts and issues involved in this lawsuit:

    (1)    **Plaintiff Chris Prosch**
              **c/o W. Whitney Seals**

> Pate & Cochrun LLP
> P.O. Box 10448
> Birmingham, AL 35202-0448
> (205) 323-3900

(2)   Geneva Prosch
      c/o W. Whitney Seals
      Pate & Cochrun LLP
      P.O. Box 10448
      Birmingham, AL 35202-0448
      (205) 323-3900

Plaintiff and Geneva Prosch are believed to have knowledge regarding the allegations in their Complaint.

(3)   One or more Representative(s) of Santander Consumer USA Inc.
      c/o R. Frank Springfield
      Burr & Forman LLP
      420 North 20th Street, Suite 3400
      Birmingham, AL 35203

One or more representative(s) of SC, including Mark Mooney, Senior Vice President of Loss Recovery and Recovery Operations, are believed to have knowledge regarding the allegations in the Complaint and its defenses thereto.

(4)   One or more Representative(s) of Allstar Recovery, LLC
      c/o R. Frank Springfield
      Burr & Forman LLP
      420 North 20th Street, Suite 3400
      Birmingham, AL 35203

On or more representatives of Allstar Recovery, including Paige Fox, are believed to have knowledge regarding the allegations in the Complaint and its defenses thereto.

    (5)    **One or more Representative(s) of Patrick K. Willis Co. d/b/a**
            **American Recovery Services**
            **c/o R. Frank Springfield**
            **Burr & Forman LLP**
            **420 North 20th Street, Suite 3400**
            **Birmingham, AL 35203**

On or more representatives of Patrick K. Willis Co., including Steven Schelk, are believed to have knowledge regarding the allegations in the Complaint and its defenses thereto.

    (6)    **One or more Representative(s) of ADESA Atlanta**
            **5055 Oakley Industrial Blvd.**
            **Fairburn, GA 30213**
            **(770) 357-2277**

One or more representatives of ADESA Atlanta may have knowledge regarding the repossession and release of the vehicle identified in Plaintiff's Complaint.

    (7)    **One or more representatives of GEICO**
            **Unknown**

One or more representatives of GEICO may have knowledge regarding any insurance claim made on the vehicle by Plaintiff.

    (8)    **One or more representatives of Tuscaloosa Police Department**
            **3801 Trevor S Phillips Ave.**
            **Tuscaloosa, AL 35401**
            **(205) 349-2121**

One or more representatives of the Tuscaloosa Police Department may have knowledge regarding any reports made on the vehicle by Plaintiff.

(9)    **One or more representatives of Tuscaloosa County Sherriff Dept.**
       **714 ½ Greensboro Ave.**
       **Tuscaloosa, AL 35401**
       **(205) 752-0616**

One or more representatives of the Tuscaloosa County Sherriff's Office may

have knowledge regarding a repossession report made on the vehicle by Allstar

Recovery, LLC.

(10)   **One or more representatives of Jason's Deli**
       **Unknown**

One or more representatives of Jason's Deli may have knowledge regarding

Plaintiff's employment history and claims of lost wages due to the allegations in

the Complaint.

As discovery is ongoing, Defendant reserves the right to supplement this

Response.

## INTERROGATORY NO. 9:

Please identify who trained the individual who physical [*sic*] repossessed the

Vehicle, when he began his employment with ARS and identify specifically the

training manuals, notes, memoranda, or other documents or materials of any kind

utilized to train this individual.

## RESPONSE NO. 9:

Defendant objects to this Interrogatory to the extent it seeks the personal

information of third parties without their consent.  Defendant objects to the above

interrogatory to the extent that it seeks information that is irrelevant to the issues in this lawsuit and is not relevant to the parties' claims and defenses. Defendant objects to this interrogatory to the extent it seeks information that is protected by the attorney-client privilege or work-product doctrine or which is confidential and/or proprietary in nature. Subject to and without waiving the foregoing objections, Defendant states that it lacks information that is responsive to this interrogatory, as none of its employees physically repossessed the vehicle or trained the person that physically repossessed the vehicle.

**INTERROGATORY NO. 10:**

State the names, addresses, and relationship to the defendant of any witnesses to the repossession. If the names of the witnesses to the repossession are unknown, state whether there were any witnesses; how many; their approximate ages; their sex; whether they appeared to be neighbors or passers-by; and any other identifying details known to you.

**RESPONSE NO. 10:**

Defendant objects to this Interrogatory to the extent it seeks the personal information of third parties without their consent. Subject to and without waiving the foregoing objection, Defendant states that it lacks information that is responsive to this interrogatory.

**INTERROGATORY NO. 11:**

State the name, last known address, and employment position of each person who made or approved the decision to repossess said collateral.

**RESPONSE NO. 11:**

Defendant objects to this Interrogatory to the extent it seeks the personal information of third parties without their consent.   Defendant objects to the above interrogatory on the grounds that it assumes facts not in evidence. Subject to and without waiving the foregoing objection, Defendant states that Nisha Singh, LPR Dispatcher, was notified on June 8, 2016 that the subject vehicle had been located via an LPR hit on or about 2:40 a.m. CST. Ms. Singh confirmed the vehicle to be an active LPR assignment and then issued the order of repossession to Allstar on or about 2:47 a.m. CST. Ms. Singh is no longer employed with Defendant. Her last known address is ████████████████████

**INTERROGATORY NO. 12:**

Was any damage done to said collateral during repossession?  If so, state the following:

a.   Describe the damage;

b.   State whether the damage was repaired;

c.   State the name, address, telephone number and business position of the person or persons who made the repairs;

14

d.  State the cost of the repairs;

e.  State who paid for the repairs.

**RESPONSE NO. 12:**

Defendant states that it lacks information that is responsive to this interrogatory.

**INTERROGATORY NO. 13:**

Please state how the individual that physically repossessed the Vehicle was compensated by ARS for his repossession work.  Specifically state whether he was a salaried or hourly employee or if he was paid per repossession.

**RESPONSE NO. 13:**

Defendant objects to the above interrogatory on the grounds that it seeks information that is irrelevant to the issues in this lawsuit and is not relevant to the parties' claims and defenses.  Defendant objects to this interrogatory to the extent it seeks information that is confidential and/or proprietary in nature.  Subject to and without waiving the foregoing objections, Defendant states that the person that physically repossessed the vehicle is not an employee of Defendant.  Therefore, Defendant lacks information to respond to this interrogatory.

**INTERROGATORY NO. 14:**

Please state how ARS was compensated by Santander Consumer USA for repossessing vehicles.  Specifically, state if ARS was paid per repossession.

## RESPONSE NO. 14:

Defendant objects to the above interrogatory on the grounds that it seeks information that is irrelevant to the issues in this lawsuit and is not relevant to the parties' claims and defenses. Defendant objects to this interrogatory to the extent it seeks information that is confidential and/or proprietary in nature. Subject to and without waiving the foregoing objections, Santander Consumer USA Inc. paid Defendant ███████ related to the subject repossession.

As to Responses to Interrogatories:

PATRICK K. WILLIS COMPANY, INC.

By:  Steven Schelk

Its:  Chief Risk Officer

STATE OF ___California___ )

COUNTY OF ___El Dorado___ )

BEFORE ME, the undersigned authority, personally appeared Steven Schelk, authorized representative of Patrick K. Willis Company, Inc., who is personally known to me, and deposes and says that the answers written after each of the foregoing Responses are true and correct to the best of his knowledge, information and belief and subscribed name thereto in certification thereof.

Given under my hand and seal this the 17th day of April, 2017.

NOTARY PUBLIC

[SEAL]

My Commission Expires: Feb 1, 2018

TINA WILLINGHAM
Commission # 2056617
Notary Public - California
El Dorado County
My Comm. Expires Feb 1, 2018

As to objections:


*s/ R. Frank Springfield*
R. Frank Springfield (SPR024)
Rachel R. Friedman (FRI045)
BURR & FORMAN LLP
420 North 20th Street
Suite 3400
Birmingham, AL  35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100
fspringf@burr.com
rfriedman@burr.com

Attorneys for Defendants
PATRICK K. WILLIS COMPANY, INC.

# CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing document has been served on the following by directing same to their office addresses via email and first-class, United States mail, postage prepaid, on this the 17th day of April, 2017:

John C. Hubbard
John C. Hubbard LLC
2015 First Avenue North
Birmingham, AL 35203
jch@jchubbardlaw.com

W. Whitney Seals
Pate & Cochrun LLP
PO Box 10448
Birmingham, AL 35202
filings@plc-law.com

*s/ R. Frank Springfield*
OF COUNSEL

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**          CIVIL CODE § 1189

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California                )
County of _El Dorado_____          )

On _April 17, 2017_ before me, _Tina Willingham, notary public,_
    *Date*                *Here Insert Name and Title of the Officer*

personally appeared _Steven Schelk_
                      *Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
               *Signature of Notary Public*

> TINA WILLINGHAM
> Commission # 2056617
> Notary Public - California
> El Dorado County
> My Comm. Expires Feb 1, 2018

*Place Notary Seal Above*

──────────────────── **OPTIONAL** ────────────────────
*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: _Interrogatories_     Document Date: _4/17/17_
Number of Pages: _20_ Signer(s) Other Than Named Above: _N/A_

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____     Signer's Name: _____
☐ Corporate Officer — Title(s): _____     ☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited  ☐ General      ☐ Partner — ☐ Limited  ☐ General
☐ Individual       ☐ Attorney in Fact     ☐ Individual       ☐ Attorney in Fact
☐ Trustee       ☐ Guardian or Conservator   ☐ Trustee       ☐ Guardian or Conservator
☐ Other: _____        ☐ Other: _____
Signer Is Representing: _____     Signer Is Representing: _____

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item #5907

| RID | ACTNUM | LGNUM | DBNAME | VIN | STATUS | EMPNUM | CLASS | DATE | TIME_IN | TIME_OUT | MINS | NUMCHAR | LAST_UPDATED | NOTES | INFO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 0717 | 2984 ALCI | | | | OPEN | 98942 | WEB | OSANEW | 5/10/2016 | 5:38 AM | 5:38 AM | 0 | 129 | 5/10/2016 5:38 | 5/10/2016 5:38:24 AM (CITYWIDE INVESTIGATORS - MONTGOMERY) New Assignment - NEED ADDITIONAL FEES - FEE NEEDS TO BE ___ OR SELMA | EDIT/NoteNum=___649/OSANew/IP=71.86.66.83/U ser=CITYWIDE INVESTIGATORS - MONTGOMERY |
| 2812 | 2984 ALRR | | | | OPEN | 98942 | WEB | OSANEW | 5/10/2016 | 6:48 AM | 6:48 AM | 0 | 71 | 5/10/2016 6:48 | 5/10/2016 6:48:56 AM (RIVER REGION RECOVERY) New Assignment - ACCEPT - | EDIT/NoteNum=___649/OSANew/IP=97.78.152.40/ User=RIVER REGION RECOVERY |
| 1486 | 2984 ALRR | | | | OPEN | 98942 | WEB | OSANOTES | 5/11/2016 | 7:38 AM | 7:38 AM | 0 | 542 | 5/11/2016 7:38 | 5/11/2016 7:38:04 AM (RIVER REGION RECOVERY) Account Editing - Submit Instructions (Debtor Home - N/A) Address Status: Other - N/A) Contact Status: Other - N/A) Male Contact With: Other - N/A) Name of Contact: [Name of Apt., Condo, MH Park: [Parking Info: Carport [Debtor Name on Call Box, Door or Mail Box? no] Employer Verified: no] Home Address Verified: no] AGENT RAN ___ 1 AM, NO COLLATERAL SEEN. | EDIT/NoteNum=___649/NewWebNotes/IP=97.78.1. 52.40/User=RIVER REGION RECOVERY |
| 5611 | 2984 ALRR | | | | OPEN | 98942 | WEB | OSANOTES | 5/11/2016 | 7:38 AM | 7:38 AM | 0 | 520 | 5/11/2016 7:38 | 5/11/2016 7:38:26 AM (RIVER REGION RECOVERY) Account Editing - Submit Instructions (Debtor Work - (DALLAS)) Address Type: Other - N/A) Address Status: Other - N/A) Contact Status: Other - N/A) Male Contact With: Other - N/A) Name of Contact: [Name of Apt., Condo, MH Park: [Parking Info: Carport [Debtor Name on Call Box, Door or Mail Box? no] Employer Verified: no] Home Address Verified: no] AGENT RAN ___ 5 AM, NO COLLATERAL SEEN. | EDIT/NoteNum=___649/NewWebNotes/IP=97.78.1. 52.40/User=RIVER REGION RECOVERY |
| 1001 | 2984 DRIVE3 | | | | OPEN | 98942 | AMWE | | 5/20/2016 | 12:44:03 | 12:45:09 | 1 | 277 | 5/20/2016 12:45 | | EDIT/x1/xCK/AMANDUM ___041 |
| 2461 | 2984 ALRR | | | | OPEN | 98942 | WEB | OSANOTES | 5/24/2016 | 7:04 AM | 7:04 AM | 0 | 212 | 5/24/2016 7:04 | 5/24/2016 7:04:47 AM (RIVER REGION RECOVERY) Account Editing - Submit Instructions (Debtor Home - ) AGENT RAN ___ NO COLLATERAL SEEN. | EDIT/NoteNum=___649/NewWebNotes/IP=97.78.1. 52.40/User=RIVER REGION RECOVERY |
| 2463 | 2984 ALRR | | | | OPEN | 98942 | WEB | OSANOTES | 5/24/2016 | 7:04 AM | 7:04 AM | 0 | 190 | 5/24/2016 7:04 | 5/24/2016 7:04:47 AM (RIVER REGION RECOVERY) Account Editing - Submit Instructions (Debtor Work - (DALLAS)) AGENT RAN ___ NO COLLATERAL SEEN. | EDIT/NoteNum=___649/NewWebNotes/IP=97.78.1. 52.40/User=RIVER REGION RECOVERY |
| 3215 | 2984 ALRR | | | | OPEN | 98942 | WEB | OSANOTES | 5/27/2016 | 7:13 AM | 7:13 AM | 0 | 212 | 5/27/2016 7:13 | 5/27/2016 7:13:05 AM (RIVER REGION RECOVERY) Account Editing - Submit Instructions (Debtor Home - ) AGENT RAN ___ NO COLLATERAL SEEN. | EDIT/NoteNum=___649/NewWebNotes/IP=97.78.1. 52.40/User=RIVER REGION RECOVERY |
| 3216 | 2984 ALRR | | | | OPEN | 98942 | WEB | OSANOTES | 5/27/2016 | 7:13 AM | 7:13 AM | 0 | 189 | 5/27/2016 7:13 | 5/27/2016 7:13:05 AM (RIVER REGION RECOVERY) Account Editing - Submit Instructions (Debtor Work - (DALLAS)) AGENT RAN ___ NO COLLATERAL SEEN. | EDIT/NoteNum=___649/NewWebNotes/IP=97.78.1. 52.40/User=RIVER REGION RECOVERY |
| 1242 | 2984 ALRR | | | | OPEN | 98942 | WEB | OSANOTES | 6/1/2016 | 8:24 AM | 8:24 AM | 0 | 211 | 6/1/2016 8:24 | 6/1/2016 8:24:33 AM (RIVER REGION RECOVERY) Account Editing - Submit Instructions (Debtor Home - ) AGENT RAN ___ NO COLLATERAL SEEN. | EDIT/NoteNum=___649/NewWebNotes/IP=97.78.1. 52.40/User=RIVER REGION RECOVERY |
| 1243 | 2984 ALRR | | | | OPEN | 98942 | WEB | OSANOTES | 6/1/2016 | 8:24 AM | 8:24 AM | 0 | 191 | 6/1/2016 8:24 | 6/1/2016 8:24:33 AM (RIVER REGION RECOVERY) Account Editing - Submit Instructions (Debtor Work - ) AGENT RAN ___ SHOWING | EDIT/NoteNum=___649/NewWebNotes/IP=97.78.1. 52.40/User=RIVER REGION RECOVERY |

EXHIBIT 4

PENGAD 800-631-6989

CONFIDENTIAL

PK Willis-Prosch 000011

PK Willis-Prosch 000012

| ID | Code | Acct | Status | Method | Type | Date | Time | N1 | N2 | Timestamp | Note | Description | Edit |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3776 | 984 AURR | 99842 | OPEN | WEB | OSANOTES | 6/3/2016 | 9:01 AM | 0 | 211 | 6/3/2016 9:01 | NO COLLATERAL SEEN | [[AGENT RAN]] 6/3/2016 9:01:44 AM (RIVER REGION RECOVERY) Account Editing - Submit Instructions (Debtor Name... | EDIT/NoteNum___869/NewWebNote/JP=97.78.152.40/user=RIVER REGION RECOVERY |
| 777 | 984 AURR | 99842 | OPEN | WEB | OSANOTES | 6/3/2016 | 9:01 AM | 0 | 189 | 6/3/2016 9:01 | NO COLLATERAL SEEN | [AGENT RAN] 6/3/2016 9:01:44 AM (RIVER REGION RECOVERY) Account Editing - Submit Instructions (Debtor Work... | EDIT/NoteNum___869/NewWebNote/JP=97.78.152.40/user=RIVER REGION RECOVERY |
| 4491 | 984 DRIVE3 | 99842 | OPEN | NISH | OSANOTES | 6/8/2016 | 0:40:56 | 6 | 603 | 6/8/2016 0:47:01 | | | EDIT/A/APRI/REPRO/P/NOX/NISHAS___824  EDIT/CAN/STECHG>OPEN/NISHAS___667 |
| 348 | 984 DRIVE3 | 99842 | OPEN | NISH | OSANOTES | 6/8/2016 | 6:08:46 | 6 | 224 | 6/8/2016 6:08:55 | | | EDIT/CAN/STECHG>OPEN/NISHAS___667 |
| 439 | 984 AURR | 99842 | OPEN | WEB | OSA_REQV | 6/8/2016 | 7:40 AM | 0 | 82 | 6/8/2016 7:40 | Assignment Request verified - CLOSE . | 6/8/2016 7:40:14 AM (RIVER REGION RECOVERY) Assignment Request verified - CLOSE . | EDIT/A/OSAActive/JP=97.78.152.40/user=RIVER REGION RECOVERY |
| 745 | 984 DRIVE3 | 99842 | OPEN | ABNO | OSANOTES | 6/9/2016 | 6:53:24 | 1 | 0 | 6/9/2016 6:54:01 | | | EDIT/CAN/STECHG>OPEN/ABIGAIL N/204981 |
| 775 | 984 MSAS | 99842 | OPEN | WEB | OSA_REQV | 6/9/2016 | 6:54 AM | 0 | 123 | 6/9/2016 6:54 | Request verified - CLOSE, UNIT SECURED. PLEASE REOPEN. THANK YOU. TR | 6/9/2016 6:54:29 AM (ALLSTAR RECOVERY) Assignment Request verified - CLOSE, UNIT SECURED. PLEASE REOPEN. THANK YOU. TR | EDIT/NoteNum___649/OSAReqVer/JP=12.186.168.162/user=ALLSTAR RECOVERY |
| 145 | 984 DRIVE3 | 99842 | CLOSE | BRAR | OSANOTES | 6/9/2016 | 7:01:40 | 8 | 626 | 6/9/2016 7:01 | | | EDIT/CAN/STECHG>CLOSE/BRIAN A___215 |
| 2159 | 984 DRIVE3 | 99842 | CLOSE | BRAR | OSANOTES | 6/9/2016 | 7:01:53 | 0 | 0 | 6/9/2016 7:01 | | | EDIT/CAN/STECHG>CLOSE/BRIAN A___215 |
| 170 | 984 DRIVE3 | 99842 | JBM | JBM | | 6/9/2016 | 9:23:07 | 0 | 0 | 6/9/2016 9:23 | | | EDIT/A/D/VON/ABIAD___267 |
| 473 | 984 DRIVE3 | 99842 | OPEN | BRAR | OSANOTES | 6/9/2016 | 9:38:03 | 2 | 144 | 6/9/2016 9:39 | | | EDIT/V/VON/BRIAN A___15 |
| 082 | 984 MSAS | 99842 | OPEN | WEB | OSA_REPO | 6/9/2016 | 9:48 AM | 0 | 824 | 6/9/2016 9:48 | 6/9/2016 9:48:09 AM (ALLSTAR RECOVERY) Account has been Repossessed - Reposession Notification (Account has been REPOSSESSED by MSAS - ALLSTAR RECOVERY. Repossession Information) Account___984 R/O:___Legal DRIVE3   CSR: DRIVE PENDING CLOSED   Color: BLACK   Mileage: N/A   Date/Time Recovered: 6/9/2016 2:40 AM CENTRAL (CST/DST)   Driver: CHRIS   Repo Location: 1849-1901 FOX RIDGE RD, TUSCALOOSA, AL 35406   Storage Location: 0071025 - 14409 U.S. 43, NORTHPORT, AL 35475)   Police Dept: TUSCALOOSA COUNTY SHERIFF OFFICE   Report#: DISPATCH   Police Date/Time Reported: 6/9/2016 2:35 AM CENTRAL (CST/DST)   Keys: NO   Request: NO   Fee:   Property: Tag, Papers[1]   Property List Prepared By: Tyler | | EDIT/NoteNum___869/NewNote/JP=12.186.168.162/user=ALLSTAR RECOVERY |
| 087 | 984 MSAS | 99842 | OPEN | WEB | OSA_PROP | 6/9/2016 | 9:48 AM | 0 | 165 | 6/9/2016 9:48 | 6/9/2016 9:48:11 AM Personal Property Notification (Account has personal property reported by MSAS - ALLSTAR RECOVERY. Property/Tag, Papers[1]) | | EDIT/NoteNum___869/NewPhoteNote/JP=12.186.168.162/user=ALLSTAR RECOVERY |
| 104 | 984 MSAS | 99842 | OPEN | WEB | TRANSTAT | 6/9/2016 | 9:48:33 | 0 | 0 | 6/9/2016 9:48 | Marked as ready to transmit Repo Notification | | |
| 660 | 984 MSAS | 99842 | OPEN | WEB | OSACONDR | 6/9/2016 | 9:58 AM | 0 | 154 | 6/9/2016 9:58 | Condition Report - Submit Instructions (New Condition Report Added to the system from ALLSTAR RECOVERY | 6/9/2016 9:58:37 AM (ALLSTAR RECOVERY) Account New Condition Report - Submit Instructions (Condition Report Added to the system from ALLSTAR RECOVERY | EDIT/NoteNum___649/OSAConditionAdd/JP=12.186.168.162/user=ALLSTAR RECOVERY |
| 920 | 984 MSAS | 99842 | OPEN | WEB | OSANOTES | 6/9/2016 | 9:59 AM | 0 | 174 | 6/9/2016 9:59 | Information About Picture CR PICTURE: FRONT | 6/9/2016 9:59:29 AM (ALLSTAR RECOVERY) New Picture Added - Submit Instructions (Picture cric_984_FRONT_2016060905929-JPG. Information About Picture | EDIT/NoteNum___649/NewWebNote/JP=12.186.168.162/user=ALLSTAR RECOVERY |
| 931 | 984 MSAS | 99842 | OPEN | WEB | OSANOTES | 6/9/2016 | 9:59 AM | 0 | 172 | 6/9/2016 9:59 | Information About Picture CR PICTURE: REAR | 6/9/2016 9:59:36 AM (ALLSTAR RECOVERY) New Picture Added - Submit Instructions (Picture cric_984_REAR_2016060905936.JPG. Information About Picture | EDIT/NoteNum___649/NewWebNote/JP=12.186.168.162/user=ALLSTAR RECOVERY |
| 940 | 984 MSAS | 99842 | OPEN | WEB | OSANOTES | 6/9/2016 | 9:59 AM | 0 | 177 | 6/9/2016 9:59 | Information About Picture CR PICTURE: LEFT SIDE | 6/9/2016 9:59:41 AM (ALLSTAR RECOVERY) New Picture Added - Submit Instructions (Picture cric_984_LEFT_2016060905941.JPG. Information About Picture | EDIT/NoteNum___649/NewWebNote/JP=12.186.168.162/user=ALLSTAR RECOVERY |
| 247 | 984 MSAS | 99842 | OPEN | WEB | OSANOTES | 6/9/2016 | 9:59 AM | 0 | 179 | 6/9/2016 9:59 | Information About Picture CR PICTURE: RIGHT SIDE | 6/9/2016 9:59:48 AM (ALLSTAR RECOVERY) New Picture Added - Submit Instructions (Picture cric_984_RIGHT_2016060905948.JPG. Information About Picture | EDIT/NoteNum___649/NewWebNote/JP=12.186.168.162/user=ALLSTAR RECOVERY |

CONFIDENTIAL

PK Willis-Prosch 000013

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 957 | 384 MSAS | | 8942 | OPEN | WEB | IBM | | OSANOTES | 6/9/2016 | 9:59 AM | 9:59 AM | 0 | 380 | 6/9/2016 9:59 | 6/9/2016 9:59:57 AM (ALLSTAR RECOVERY) New Picture Added - Submit Instructions(Picture: crpic384_ODOMETER_20160609095957.JPG - Information About Picture: CR PICTURE: ODOMETER | EDIT/NoteNum5649/NewWebNotes/P=12,186, 168,162/User=ALLSTAR RECOVERY |
| 989 | 384 MSAS | | 8942 | OPEN | WEB | | | OSANOTES | 6/9/2016 | 10:00 AM | 10:00 AM | 0 | 185 | 6/9/2016 10:00 | 6/9/2016 10:00:21 AM (ALLSTAR RECOVERY) New Picture Added - Submit Instructions(Picture: crpic384_VIN_20160609100021.JPG - Information About Picture: CR PICTURE: VIN/SERIAL NUMBER | EDIT/NoteNum5649/NewWebNotes/P=12,186, 168,162/User=ALLSTAR RECOVERY |
| 998 | 384 MSAS | | 8942 | OPEN | WEB | | | OSANOTES | 6/9/2016 | 10:00 AM | 10:00 AM | 0 | 197 | 6/9/2016 10:00 | 6/9/2016 10:00:30 AM (ALLSTAR RECOVERY) New Picture Added - Submit Instructions(Picture: crpic384_STEERCOLUMN_20160609100030.JPG - Information About Picture: CR PICTURE: FULL DASH W/ STEERING | EDIT/NoteNum5649/NewWebNotes/P=12,186, 168,162/User=ALLSTAR RECOVERY |
| 001 | 384 MSAS | | 8942 | OPEN | WEB | | | OSANOTES | 6/9/2016 | 10:00 AM | 10:00 AM | 0 | 185 | 6/9/2016 10:00 | 6/9/2016 10:00:34 AM (ALLSTAR RECOVERY) New Picture Added - Submit Instructions(Picture: crpic384_FRONTSEAT_20160609100034.JPG - Information About Picture: CR PICTURE: FRONT SEATS | EDIT/NoteNum5649/NewWebNotes/P=12,186, 168,162/User=ALLSTAR RECOVERY |
| 007 | 384 MSAS | | 8942 | OPEN | WEB | | | OSANOTES | 6/9/2016 | 10:00 AM | 10:00 AM | 0 | 182 | 6/9/2016 10:00 | 6/9/2016 10:00:40 AM (ALLSTAR RECOVERY) New Picture Added - Submit Instructions(Picture: crpic384_BACKSEAT_20160609100040.JPG - Information About Picture: CR PICTURE: REAR SEAT | EDIT/NoteNum5649/NewWebNotes/P=12,186, 168,162/User=ALLSTAR RECOVERY |
| 015 | 384 MSAS | | 8942 | OPEN | WEB | | | OSANOTES | 6/9/2016 | 10:00 AM | 10:00 AM | 0 | 184 | 6/9/2016 10:00 | 6/9/2016 10:00:46 AM (ALLSTAR RECOVERY) New Picture Added - Submit Instructions(Picture: crpic384_TRUNK_20160609100046.JPG - Information About Picture: CR PICTURE: TRUNK OR CARGO | EDIT/NoteNum5649/NewWebNotes/P=12,186, 168,162/User=ALLSTAR RECOVERY |
| 669 | 384 DRIVE3 | | 8942 | OPEN | IBM | | | 6/9/2016 | 10:10:46 | 10:10:49 | 0 | 0 | 6/9/2016 10:10 | | EDIT/ACAN/STSCHG->OPEN//IOHNMAADO/267 |
| 311 | 384 DRIVE3 | | 8942 | REPO | PRQU | | | 6/9/2016 | 11:34 AM | 11:34 AM | 0 | 0 | 6/9/2016 11:34 | | Marked as ready to transmit Condition Report |
| 366 | 384 DRIVE3 | | 8942 | REPO | PRQU | | | 6/9/2016 | 11:33:02 | 11:33:02 | 2 | 148 | 6/9/2016 11:34 | | EDIT/AD/4R/REPO/PgsOK//PRISCILLAG/161 |
| 044 | 384 DRIVE3 | | 8942 | REPO | RAS1 | | | 6/9/2016 | 12:41:21 | 12:41:21 | 0 | 221 | 6/9/2016 12:41 | | EDIT/ACAN/STSCHG->REPO//RASIAS/58 |
| 044 | 384 DRIVE3 | | 8942 | REPO | CHTR | | | 6/21/2016 | 13:14:19 | 13:14:19 | 41 | 147 | 6/21/2016 13:54 | | EDIT/ACAN/STSCHG->REPO/CHRISTINA/36 |
| 697 | 384 DRIVE3 | | 8942 | REPO | CHTR | | | 6/21/2016 | 13:59:31 | 14:04:47 | 5 | 146 | 6/21/2016 14:04 | | EDIT/ACAN/STSCHG->REPO/CHRISTINA/236 |
| 771 | 384 DRIVE3 | | 8942 | REPO | DIGE | | | 6/21/2016 | 14:29:36 | 14:29:45 | 0 | 0 | 6/23/2016 14:29 | | EDIT/ACAN/STSCHG->REPO/DIANA/2209 |
| 798 | 384 DRIVE3 | | 8942 | REPO | CHTR | | | 6/24/2016 | 14:42:46 | 15:08:50 | 26 | 0 | 6/24/2016 15:08 | | EDIT/ACAN/STSCHG->REPO/CHRISTINA/310 |
| 440 | 384 DRIVE3 | | 8942 | REPO | MYHO | | | 6/27/2016 | 11:25:02 | 11:34:48 | 10 | 221 | 6/27/2016 11:34 | | EDIT/ACAN/STSCHG->REPO/MIKEY/309 |
| 493 | 384 DRIVE3 | | 8942 | REPO | CHTR | | | 6/27/2016 | 11:28:18 | 11:35:48 | 7 | 221 | 6/27/2016 11:35 | | EDIT/ACAN/STSCHG->REPO/CHRISTINA/160 |
| 846 | 384 DRIVE3 | | 8942 | REPO | DEAB | | | 6/27/2016 | 13:09:19 | 13:13:32 | 4 | 140 | 6/27/2016 13:13 | | EDIT/ACAN/STSCHG->REPO/DENISEA/584 |
| 099 | 384 DRIVE3 | | 8942 | REPO | CHTR | | | 6/27/2016 | 13:16:04 | 13:16:36 | 6 | 203 | 6/27/2016 13:16 | | EDIT/ACAN/STSCHG->REPO/CHRISTINA/54 |
| 612 | 384 DRIVE3 | | 8942 | REPO | CHTR | | | 6/27/2016 | 13:59:34 | 14:01:21 | 2 | 86 | 6/27/2016 14:01 | | EDIT/ACAN/STSCHG->REPO/CHRISTINA/854 |
| 462 | 384 DRIVE3 | | 8942 | REPO | ROOO | | | 7/1/2016 | 11:08:09 | 11:13:44 | 6 | 0 | 7/1/2016 11:13 | | EDIT/ACAN/STSCHG->REPO/ROFINE/544 |
| 725 | 384 DRIVE3 | | 8942 | REPO | VOHO | | | 7/6/2016 | 11:45:21 | 11:54:23 | 9 | 336 | 7/6/2016 11:54 | | EDIT/ACAN/STSCHG->REPO/VANDAH/864 |
| 714 | 384 DRIVE3 | | 8942 | REPO | WEHI | | | 7/6/2016 | 11:48:49 | 13:12:36 | 84 | 208 | 7/6/2016 13:12 | | EDIT/ACAN/STSCHG->REPO/WESTON/405 |
| 332 | 384 DRIVE3 | | 8942 | REPO | SHYC | | | 7/25/2016 | 13:10:46 | 13:26:21 | 16 | 0 | 7/15/2016 13:26 | | EDIT/ACAN/STSCHG->REPO/SHITOMA/597 |
| 797 | 384 DRIVE3 | | 8942 | REPO | CHTR | | | 7/28/2016 | 7:27:13 | 7:39:26 | 2 | 49 | 7/28/2016 7:39 | | EDIT/ACAN/STSCHG->REPO/CHRISTINA/371 |
| 943 | 384 DRIVE3 | | 8942 | REPO | VOHO | | | 7/28/2016 | 7:34:40 | 7:41:39 | 7 | 143 | 7/28/2016 7:41 | | EDIT/V/IvOK/YOLANDA/173 |
| 974 | 384 DRIVE3 | | 8942 | REPO | ABNO | | | 7/28/2016 | 8:23:43 | 8:25:38 | 2 | 0 | 7/28/2016 8:25 | | EDIT/ACAN/STSCHG->REPO/ABIGAIL/402 |
| 271 | 384 DRIVE3 | | 8942 | REPO | CHTR | | | 7/28/2016 | 8:25:24 | 8:29:49 | 4 | 138 | 7/28/2016 8:29 | | EDIT/ACAN/STSCHG->REPO/CHRISTINA/371 |
| 942 | 384 DRIVE3 | | 8942 | REPO | LUGA | | | 7/28/2016 | 8:37:07 | 8:39:35 | 1 | 0 | 7/28/2016 8:38 | | EDIT/ACAN/STSCHG->REPO/LUCIAG/566 |
| 040 | 384 DRIVE3 | | 8942 | REPO | CHTR | | | 7/28/2016 | 8:41 AM | 8:41 AM | 0 | 0 | 7/28/2016 8:41 | | Marked as ready to transmit Redemption Release to Agent |
| 885 | 384 DRIVE3 | | 8942 | REPO | CHTR | | | 7/28/2016 | 8:38:20 | 9:04:32 | 26 | 519 | 7/28/2016 9:04 | | EDIT/Save/REDEEM(pg/Save/Save/Save/Save/A OK/CHRISTINA/171 |
| 993 | 384 DRIVE3 | | 8942 | REPO | CHTR | | | 7/28/2016 | 10:04:49 | 10:04:57 | 7 | 0 | 7/28/2016 10:04 | | EDIT/ACAN/STSCHG->REPO/CHRISTINA/371 |
| 134 | 384 DRIVE3 | | 8942 | | MAVA | | | 8/1/2016 | 9:21 AM | 9:21 AM | 0 | 0 | 8/1/2016 9:21 | | Marked as ready to transmit Signed Redemption Release |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3339 | DRIVE3 | | 98942 | REPO | MAVA | 8/1/2016 | 9:19:06 | 9:21:37 | 3 | 165 | 8/1/2016 9:21 | EDIT/HCM/MADISONV/1713 |
| 5055 | DRIVE3 | | 98942 | REPO | MAVA | 8/1/2016 | 9:30:20 | 9:30:24 | 0 | 0 | 8/1/2016 9:30 | EDIT/ACAN/STSCHG->REPO/MADISONV/1713 |
| 4171 | DRIVE3 | | 98942 | REPO | ASOR | 8/30/2016 | 16:21:02 | 16:21:26 | 0 | 0 | 8/30/2016 16:21 | EDIT/ACAN/STSCHG->REPO/ASHLEY/.595 |
| 7127 | DRIVE3 | | 98942 | REPO | JROT | 2/14/2017 | 12:24:12 | 12:26:22 | 2 | 0 | 2/14/2017 12:26 | EDIT/ACAN/STSCHG->REPO/JESSICAROTH/.713 |
| 7311 | DRIVE3 | | 98942 | REPO | IBM | 2/14/2017 | 12:24:53 | 12:46:04 | 21 | 0 | 2/14/2017 12:46 | EDIT/APRT/ACAN/STSCHG->REPO/JOHNMA007/.130 21 |
| 3413 | DRIVE3 | | 98942 | REPO | MRM | 2/15/2017 | 8:44:56 | 8:53:00 | 8 | 0 | 2/15/2017 8:53 | EDIT/ACAN/STSCHG->REPO/MRMILLMAN/.6013 |
| 7490 | DRIVE3 | | 98942 | REPO | JT | 2/15/2017 | 9:12:41 | 9:39:01 | 26 | 0 | 2/15/2017 9:39 | EDIT/ACAN/STSCHG->REPO/JEFTI07/.959 |
| 7217 | DRIVE3 | | 98942 | REPO | JT | 2/15/2017 | 11:11:53 | 11:13:00 | 1 | 0 | 2/15/2017 11:13 | EDIT/ACAN/STSCHG->REPO/JEFTI07/.959 |
| 5590 | DRIVE3 | | 98942 | REPO | JT | 2/17/2017 | 13:02:11 | 13:05:00 | 2 | 0 | 2/17/2017 13:04 | EDIT/ACAN/STSCHG->REPO/JEFTI07/2595 |
| 7041 | DRIVE3 | | 98942 | REPO | JT | 2/20/2017 | 11:11:52 | 11:15:51 | 4 | 0 | 2/20/2017 11:15 | EDIT/ACAN/STSCHG->REPO/JEFTI07/.247 |
| 7251 | DRIVE3 | | 98942 | REPO | JT | 2/20/2017 | 11:17:17 | 11:32:09 | 15 | 0 | 2/20/2017 11:32 | EDIT/ACAN/STSCHG->REPO/JEFTI07/.247 |

CONFIDENTIAL

PK Willis-Prosch 000014



**AMERICAN RECOVERY SERVICE**
5118 Robert J. Mathews Pkwy
El Dorado Hills, CA 95762
Phone: (800) 398-6480   Fax: (800) 557-7370
### Account Status Report



A Division Of
Patrick K. Willis Company, Inc.

Internal #: ████ 2984                     FAX #:

05/09/16 06:07 PM WEB USER: DRIVE3/IREPOROBOT3 (IREPOROBOT3): WT SERVICE NEW ASSIGNMENTS.

-------------------------------------------

OTHER PEOPLE SENT BY CLIENT:
PERSON-TYPE: REFERENCE   NAME: ████████      SSN:      DRIVER LICENSE:      DOB:
PHONE-TYPE: HOME      ████4636

PERSON-TYPE: REFERENCE   NAME: ████████      SSN:      DRIVER LICENSE:      DOB:
PHONE-TYPE: HOME      ████6925

PERSON-TYPE: REFERENCE   NAME: ████████      SSN:      DRIVER LICENSE:      DOB:
PHONE-TYPE: HOME      ████2571

PERSON-TYPE: REFERENCE   NAME: ████████      SSN:      DRIVER LICENSE:      DOB:
PHONE-TYPE: HOME      ████6925

PERSON-TYPE: REFERENCE   NAME: ████████      SSN:      DRIVER LICENSE:      DOB:
PHONE-TYPE: HOME      ████2571

PERSON-TYPE: IVR      NAME: IVR1      SSN:      DRIVER LICENSE:      DOB:
PHONE-TYPE: HOME      ████0122

PERSON-TYPE: RELATIVE   NAME: ████████      SSN:      DRIVER LICENSE:      DOB: ████████
12:00:00 AM
PHONE-TYPE: HOME      ████22804

PERSON-TYPE: REFERENCE   NAME: ████████      SSN:      DRIVER LICENSE:      DOB:
PHONE-TYPE: HOME      ████4636

PERSON-TYPE: RELATIVE   NAME: ████████      SSN:      DRIVER LICENSE:      DOB: ████████
12:00:00 AM
PHONE-TYPE: HOME      ████28204

-------------------------------------------

Original Instructions:
Special Instructions: Run addresses in the following order:  1) ██████████████████████
           2) ████████

5/9/2016 6:07:29 PM---ARS VINDecoder Robot---------------------------------
Country: KOREA
Make: Kia
Vehicle Type: Passenger Car
Model: Spectra
Body Type: 4 Door Sedan
Engine Type: L4, 2.0L; DOHC
Model Year: 2009
Trim Level: EX; LX; SX



EXHIBIT _Schol K_
5
9-28-17   JJ

**CONFIDENTIAL**          **PK Willis-Prosch 000015**

Drive Line Type: FWD
Vehicle Class: Small Car
Restraint System: Dual Air Bag
Fuel Type: Gasoline
Manufacturer: Kia Motors Corp.
Transmission/MfgCode: 4 speed Automatic / N/A; 5 speed Manual / N/A
MPG: M5:23-30-26/A4:24-32-27
VIN:███████████98942
------------------------------------------------------------------

5-09-2016 6:07:48 PM---------- PKWCIPiRepoGetPreviousUpdatesRobot ---- Fetched notes, see pictures tab


5-9-2016 6:08:27 PM ------- PKW Given Address Geocode Analyzer
  DEBTOR-HOME Zipcode ████ not on a reservation
  DEBTOR-WORK Zipcode ████ not on a reservation


5-9-2016 6:11:55 PM ******************* RAMS Outcomes Robot NEW ASSIGN
OSA1: ALCI  CSR: WR

5/10/2016 5:38:24 AM (CITYWIDE INVESTIGATORS - MONTGOMERY) New Assignment - NEED ADDITIONAL FEES - fee needs to be ███ for selma


********** Notification Robot ***********
5-10-16 5:38:48 AM
Agent:   ALCI
Response: NEED ADDITIONAL FEES
Notes: fee needs to be ███ for selma
******************************************


5-10-2016 5:39:03 AM ******************* RAMS Outcomes Robot REASSIGN
OSA1: ALRR  CSR:

5/10/2016 6:48:56 AM (RIVER REGION RECOVERY) New Assignment - ACCEPT -


********** Notification Robot ***********
5-10-16 6:49:05 AM
Agent:   ALRR
Response: ACCEPT
Notes:
******************************************


5/11/2016 7:38:04 AM (RIVER REGION RECOVERY) Account Editing - Submit Instructions
Debtor Home - ██████████████    ███████████████
████████████████████████    ████████████████████

Address Type: Other - N/A
Address Status: Other - N/A
Contact Status: Other - N/A
Made Contact With: Other - N/A
Name of Contact:
Name of Apt., Condo, MH Park:
Ph. # of Apt., Condo, MH Park:
Parking Info: Carport
Debtor Name on Call Box, Door or Mail Box? no
Employer Verified: no

Home Address Verified: no

AGENT RAN ████████ AT 3AM, NO COLLATERAL SEEN.

5/11/2016 7:38:26 AM (RIVER REGION RECOVERY) Account Editing - Submit Instructions
Debtor Work –
████████████████████████

Address Type: Other - N/A
Address Status: Other - N/A
Contact Status: Other - N/A
Made Contact With: Other - N/A
Name of Contact:
Name of Apt., Condo, MH Park:
Ph. # of Apt., Condo, MH Park:
Parking Info: Carport
Debtor Name on Call Box, Door or Mail Box? no
Employer Verified: no
Home Address Verified: no

AGENT RAN █████████ AT 9AM, NO COLLATERAL SEEN.

05/20/2016 12:44 pm AMANDA WEHRLE:
Please be advised, we have ran the provided address: ███████████████████ which is a single story house with no garage. The wanted unit was not spotted at this time but we will continue with the recovery. Thank you, Amanda x3472
5/24/2016 7:04:47 AM (RIVER REGION RECOVERY) Account Editing - Submit Instructions
Debtor Home ████████████
(

AGENT RAN █████████ NO COLLATERAL SEEN.

5/24/2016 7:04:47 AM (RIVER REGION RECOVERY) Account Editing - Submit Instructions
Debtor Work ████████████████

AGENT RAN ███████ NO COLLATERAL SEEN.

5/27/2016 7:13:05 AM (RIVER REGION RECOVERY) Account Editing - Submit Instructions
Debtor Home ████████████
(

AGENT RAN █████████, NO COLLATERAL SEEN.

5/27/2016 7:13:05 AM (RIVER REGION RECOVERY) Account Editing - Submit Instructions
Debtor Work – ████████████████

AGENT RAN ████████, NO COLLATERAL SEEN

6/1/2016 8:24:33 AM (RIVER REGION RECOVERY) Account Editing - Submit Instructions
Debtor Home – ████████████
(

AGENT RAN ████████, NO COLLATERAL SEEN.

**CONFIDENTIAL**          **PK Willis-Prosch 000017**

6/1/2016 8:24:33 AM (RIVER REGION RECOVERY) Account Editing - Submit Instructions
Debtor Work ███████████████████████

AGENT RAN ████████ NO COLLATERAL SHOWING


6/3/2016 9:01:44 AM (RIVER REGION RECOVERY) Account Editing - Submit Instructions
Debtor Home - ████████████████████████████████████████
\

AGENT RAN ██████████ NO COLLATERAL SEEN.

6/3/2016 9:01:44 AM (RIVER REGION RECOVERY) Account Editing - Submit Instructions
Debtor Work - ████████████████████████

AGENT RAN ████████ NO COLLATERAL SEEN.


-----Original Message-----
From: Nisha Singh
Sent: Wednesday, June 08, 2016 12:44 AM
To: MSAS; 'CC9@RECOVERY-EMAIL.COM'
Cc: LPR3-SCUSA-CO-Stage
Subject: DRN HIT ASSIGNMENT 2009 KIA SPECTRA ██████████ 98942


From: Nisha Singh
Sent: Wednesday, June 08, 2016 12:47 AM
To: Jessica Roth; Aliza Bignami; Sheena Williams
Cc: LPR3-SCUSA-CO-Stage; HoldandClose
Subject: Vehicle Located by DRN - ████ 2984 / ██████████ 98942

We received an LPR hit and reassigned the account. The account was closed with ALRR. Please follow up. Thank you,
DRIVER/OSA: ANGELA @ MSAS
CID: ██████ 4758


06/08/2016 06:08 am NISHA SINGH:
From: CC9 [mailto:CC9@Recovery-email.com]
Sent: Wednesday, June 08, 2016 1:17 AM
To: Nisha Singh
Subject: RE: DRN HIT ASSIGNMENT 2009 KIA SPECTRA ██████████ 98942

Unit secured

6/8/2016 7:40:14 AM (RIVER REGION RECOVERY) Assignment Request verified - CLOSE -

6-8-2016 10:7:31 PM--PKWIRepoInboundRobot---------------
CLOSE request from client posted to this account
------------------------------------------------------------------

6/9/2016 6:54:29 AM (ALLSTAR RECOVERY) Assignment Request verified - CLOSE - Unit secured. Please reopen. Thank you. TR

06/09/2016 06:54 AM Account was CLOSED by client.
Reason for status change is UNKNOWN

06/09/2016 07:01 am BRIAN ARTEAGA:
SECURED CLOSE
6/9/2016**FN**RECEIVED CALL FROM:   (TYLER @ MSAS)
REPO LOCATION:  1849-1901 Fox Ridge Rd, Tuscaloosa, AL 35406 [TUSCALOOSA]
DATE / TIME SECURED: 6/8/16 2:41AM Central Time Zone.
RCVD HOLD/CLOSE: 6/08/2016 10:07 PM
PD Info (if NY or CA): Tuscaloosa County Sheriff's Dept
***FN*** SENT TO ALIZA BIGNMAI TO REOPEN THE ACCOUNT. THANKS, BRIANX3489.

06/09/2016 09:39 am BRIAN ARTEAGA:
***FN*** CALLED MSAS AND SPOKE WITH LASHONDA TO RELAY THE ACCOUNT IS NOW RE-OPENED. THANKS,
BRIANX3489.
6/9/2016 9:48:09 AM (ALLSTAR RECOVERY) Account has been Repossessed  - Repossession Notification
Account has been REPOSSESSED by MSAS - ALLSTAR RECOVERY.  Repossession Information:
    Account#:   ████2984   R/O: ██████████████
    Legal:  DRIVE3    CSR:   DRIVE PENDING CLOSES
    Color:  BLACK   Mileage:  N/A
    Date/Time Recovered:  6/9/2016 2:40 AM CENTRAL (CST)/DST
    Driver:  CHRIS    Repo Location:  1849-1901 FOX RIDGE RD, TUSCALOOSA, AL 35406    Storage Location:
0071029 - 14409 U.S. 43 , NORTHPORT, AL 35475
    Police Dept:  TUSCALOOSA COUNTY SHERIFF OFFICE    Report #:  DISPATCH
    Police Dept Date/Time Reported:  6/9/2016 2:55 AM CENTRAL (CST)/DST
    Keys:  NO    Request:  NO    Fee:
    Property:  Tag, Papers(1)
    Property List Prepared By:   Tyler

6/9/2016 9:48:11 AM (ALLSTAR RECOVERY) Personal Property Notification
Account has personal property reported by MSAS - ALLSTAR RECOVERY.
    Property=Tag, Papers(1)

06/09/2016 09:48 AM Marked as ready to transmit Repo Notification by ALLSTAR RECOVERY

---------PKWIRepoOutboundRobot----------------
Repo Notification submitted to PKWIRepoTransmitterRobot at 6-9-2016 9:49:4 AM
------------------------------------------

6/9/2016 9:59:52 AM (ALLSTAR RECOVERY) Account New Condition Report - Submit Instructions
New Condition Report Added to the system from ALLSTAR RECOVERY.

---------PKWIRepoOutboundRobot------------------- 6-9-2016 10:0:54 AM
Condition Report Pictures submitted to PKWIRepoTransmitterRobot
------------------------------------------------

6-09-2016 11:08:29 AM----------- PKWCIPiRepoGetPreviousUpdatesRobot ---- No previous updates found in iRepo

06/09/2016 11:34 am Marked as ready to transmit Condition Report by PRISCILLA QUIROZ

6/9/2016 11:34:52 am (PRQU) Account was Repossessed.

---------PKWIRepoOutboundRobot------------------- 6-9-2016 11:44:50 AM
Condition Report/Repo Report submitted to PKWIRepoFaxTransmitterRobot
------------------------------------------------

**CONFIDENTIAL**          **PK Willis-Prosch 000019**

06/21/2016 01:42 pm CHRISTINA TRUJILLO:
PER LAUREN @ MSAS, UNIT TRANSPORTED TODAY, 06/21/2016. ,TENTATIVE DELIVERY FEE OF ▮▮▮ AND HH W/ ETA.

06/21/2016 02:04 pm CHRISTINA TRUJILLO:
TAMMY @ MSAS CALLED UNIT WAS SECURED FROM AN APARTMENT COMPLEX. SHE JUST WANTED TO CONFIRM ALL INFO.

06/27/2016 11:34 am MIKE YOUNG:
RECIEVED CALL FROM SLOAN FROM MSAS #, RE HH, ADVISED CHRISTINA T. SHE REQUESTED FROM CLIENT.  SLOAN ALSO REQUESTED THAT THE HH BE FAXED TO HER DEPT. AND PROVIDED 601-510-2951 AS A FAX #

06/27/2016 01:13 pm DENISE ABEL:
OSA CALLED REGARDING THIS ACCOUNT, UNABEL TO TRANSFER TO PROCESSOR, GAVEEXT TO OSA SHE WILL CALL BACK.

06/27/2016 01:16 pm CHRISTINA TRUJILLO:
reqd hh from scusa

06/27/2016 02:01 pm CHRISTINA TRUJILLO:
HH RECVD. SENT TO MSAS VIA FAX AND EMAIL.

07/06/2016 11:46 am YOLANDA HOLIDAY:
SLOAN, CALLED WANTING TO KNOW IF SHE CAN SIGNED PP WK FROM AA, UNIT HAS BEEN RTN, ADVISED TO S/PPWK IN RECPT OF VEHICLE FROM AUCTION. ASKED TO SPK W/SOMEONE RE UNIT SITTING ON LOT.  ADVISED SLOAN THAT WE ARE WAITING FOR THE ADD FOR VEHICLE TO BE RTN TO. SHE W/B E CONTACTED

07/28/2016 07:38 am YOLANDA HOLIDAY:
A MR. (POSH) FROM ▮▮▮▮-9179 STATING HE WAS THE OWNER OF VEHICLE, VERIFIED WHOLE VIN,  GAVE SCUSA#.

***THANK YOU FOR YOUR BUSINESS!***

**CONFIDENTIAL**          **PK Willis-Prosch 000020**



# Indemnity and Hold Harmless Agreement

June 27, 2016

To: ALLSTAR RECOVERY
14409 U.S. 43
NORTHPORT, AL 35475

Re                                    Vehicle: 2009, KIA, SPECTRA
                                      VIN:            98942

To Whom It May Concern:

Santander Consumer does certify that it is the true and superior Lien Holder of record on the above owner on his/her installment purchase contract. We exercise the authority and rights granted to the lender under said contract.

We further agree to indemnify and hold harmless, ALLSTAR RECOVERY, or any of its agents and employees, from any claims, legal expenses or losses of any type incurred by the release of the said vehicle to PAR NORTH AMERICA SKIP 1ST PLACEMENT and said employees, namely                    .

This instrument is made to induce and is given in consideration of ALLSTAR RECOVERY delivering custody of said vehicle to said company after payment of all applicable fines and fees. The person executing this agreement represents and warrants that they are duly elected officer or agent of Santander Consumer and are fully empowered to deliver and execute this.

Sincerely,

ISHEIA FORD
Santander Consumer
(800) 215-6922 ext. 2799

Sworn to and subscribed to me, this
The 27 day of June , 20 16

Notary Public
My commission expires 4-1-2019

PAMELA ENGLISH
Notary Public, State of Texas
Comm. Expires 04-01-2019
Notary ID 13017531-7

EXHIBIT

© 2007-2009 SANTANDER CONSUMER USA INC. All Rights Reserved. // Confidential and Proprietary // Vehicle release Authorization // Version 2.0 (06/01/2009)

PAGE 1 OF 1



# Vehicle Release

**Date:** 7/28/2016 10:34 AM          **Vendor Name:** ARS 3rd Placement
**Sent by:** Monica Mata

## Customer Information

**Name:** CHRIS PROSCH
**Phone Number:** ▮▮▮9179
**Account Number** ▮▮9649
**Vehicle Description/VIN:** 2009, KIA, SPECTRA ▮▮▮▮▮98942
**Fee Instructions:** ********URGENT *****PLEASE BILL BACK ALL FEES & BILL TO SCUSA.
THANK YOU

MEMO TO REPO AGENT:
Please invoice SANTANDER CONSUMER USA for repossession fee only.
Customer will pay all other fees at the lot unless otherwise indicated in Fee Instructions above or Maryland/Texas disclosure below.

MEMO TO AUCTION:
Customer will pay all fees at the auction unless otherwise indicated in Fee Instructions above or Maryland/Texas disclosure below.

AGENTS AND AUCTIONS FOR MARYLAND and TEXAS ONLY:
BILL REPOSSESSION AND/OR STORAGE FEES (IF APPLICABLE) BACK TO SCUSA. All other fees are not permitted in Maryland or Texas.
Example: Personal Property, Reinstatement, Redemption, Administration Fees. etc. are not permitted in Maryland or Texas.

AGENTS AND AUCTIONS:
Redemption Fees for ALL states are not to exceed a maximum of ▮▮▮
The ▮▮▮ maximum charge is to include but not limited to, Personal Property, Daily Storage, Reinstatement or Administration Fees.

BY SIGNING BELOW, YOU ACKNOWLEDGE AND AGREE THAT: (I) THE INFORMATION CONTAINED ABOVE IS ACCURATE, (II) YOU INSPECTED THE ABOVE DESCRIBED VEHICLE, (III) YOU ACCEPT THE RETURN OF THE ABOVE DESCRIBED VEHICLE IN ITS CURRENT CONDITION AND (IV) YOU HAVE RECEIVED POSSESSION OF THE VEHICLE AND ALL PERSONAL PROPERTY.

BY SIGNING BELOW, YOU HEREBY RELEASE AND HOLD HARMLESS Santander Consumer USA Inc ("SCUSA"), ITS AFFILIATES, AND THEIR RESPECTIVE OFFICERS, DIRECTORS, EMPLOYEES, AGENTS, SUCCESSORS AND ASSIGNS (THE "RELEASED PARTIES") FROM ANY AND ALL CLAIMS RELATED TO OR ARISING OUT OF OR IN ANY WAY CONNECTED TO YOUR CONTRACT WITH SCUSA, SCUSA'S SERVICING OF YOUR CONTRACT, YOUR VEHICLE, OR THE REPOSSESSION AND RETURN OF YOUR VEHICLE FROM THE DATE OF YOUR CONTRACT WITH SCUSA THROUGH THE DATE OF THIS RELEASE AS SET FORTH BELOW.

### Total Amount Paid by Customer at time of Redemption/Vehicle Pick up

Storage: $ 00.00          Personal Property: $ 00.00          Reinstatement/Redemption $ 00.00

Other   N/A             $ 00.00          **TOTAL Paid at Agent Lot or Auction:** $ 00.00
(Must describe in detail any "other" fees above)

Redeeming Customer's Initials: **X** (╱─╲)

Agents and Auctions must refer and adhere to ALL disclosures above and not exceed Federal or State Regulations.

**Vehicle Released To:** _____
(Print Name of person retrieving vehicle)

**Signature: X** _____          **Date:** 7/28/16
(The person retrieving vehicle signs on the above line)

**Vehicle Released By:** _____          **Date:** 07.28.2016
(Print Name of person releasing vehicle)

# Please fax the signed Vehicle Release to 214-237-3661

© 2014 Santander Consumer USA Inc. All rights reserved.          SC-SER_40206-3B_021014

**CONFIDENTIAL**          **PK Willis-Prosch 000023**